**UNITED STATES of America, Plaintiff,**

v.

**Lawrence D. McCLENDON, et al., Defendants.**

**Nos. LR–CR–88–58(1) through LR–CR–88–58(17).**

United States District Court, E.D. Arkansas, W.D.

Dec. 7, 1988.

Stephen Engstrom, Wilson, Engstrom, Corum & Dudley, Little Rock, Ark., for L.D. McClendon.

Stephen B. Shankman, Memphis, Tenn., for Ken Baker.

Jack T. Lassiter, Wilson & Associates, P.A., Little Rock, Ark., for Bert Busch.

Edward W. Chandler, Memphis, Tenn., for Jerry Chapman.

Joseph H. Purvis, David Couch, co-counsel, Wallace, Dover & Dixon, P.A., Little Rock, Ark., for Edmund Slivinski.

Mike Knollmeyer, Jacksonville, Ark., for Clifford Theodore Whitten.

Robert L. Roddey, Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., No. Little Rock, Ark., for Travis Cleveland.

John Wesley Hall, Jr., Little Rock, Ark., for Rick Childress.

Paul Johnson, Little Rock, Ark., for David Walter Judd.

William C. McArthur, Little Rock, Ark., for Pat Drew.

Richard E. Holiman, Little Rock, Ark., for Ron Eugene Lillard.

Jeffrey N. Rosenzweig, Achor & Rosenzweig, Little Rock, Ark., for Lawrence T. McKee.

Richard "Clint" Saxton, Saxton & Ayres, West Memphis, Ark., for Mark Prater.

Bobby McDaniel, McDaniel & Wells, P.A., Jonesboro, Ark., for Mike Collums.

Don E. Curdie, Eichenbaum Law Firm, Little Rock, Ark., for Pat Shiplett.

Steven D. Oliver, Callahan, Crow, Bachelor & Newell, Hot Springs, Ark., for Mike Reedy.

Larry Hartsfield, McHenry, Choate & Hartsfield, and Joe A. Polk, co-counsel, Arnold, Grobmyer & Haley, Little Rock, Ark., for Jerry McSpadden.

Sandra Cherry, Linda Lipe, Asst. U.S. Attys., Little Rock, Ark., for U.S.

## ORDER

EISELE, Chief Judge.

The Indictment in this action, brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961–68, and containing one hundred and twenty-three Counts, alleges an enterprise, a conspiracy, and a pattern of racketeering activity consisting of many acts of mail fraud, wire fraud, and interstate transportation of stolen funds, all in connection with an alleged fraudulent coal mining scheme based in Western Tennessee, Eastern Arkansas and Northern Mississippi. Several motions are pending before the Court.

## THE MOTIONS TO DISMISS

The defendants have filed several motions to dismiss the Indictment or portions thereof. The motions to dismiss fall into four categories: (1) Sufficiency of the RICO allegations; (2) Statute of Limitations or Delay in Bringing Prosecution; (3) Multiple Conspiracies; (4) Dismissal of Forfeiture Action. The Government has responded. For the reasons set forth below, the Court will dismiss the RICO Counts on two separate grounds:—(1) that the indictment does not allege an "enterprise" with an ascertainable structure which exists for the purpose of maintaining operations directed towards an economic goal that has an existence apart from the alleged racke-

teering activity; and, (2) that the indictment alleges but one scheme to defraud. The defendants' motions to dismiss on the grounds of statute of limitations will be granted as to Counts two and twenty-four. As a result of the Court's rulings herein, the defendants' other grounds for dismissal—multiple conspiracies and unconstitutionality of the forfeiture actions are moot. The defendants' motions to bifurcate are also moot.

### 1. *Sufficiency of the RICO Allegations*

The defendants contend that the indictment does not sufficiently allege an "enterprise" or a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961. With regard to the enterprise element, the defendants state that the government must show that the alleged "enterprise" has an ascertainable structure distinct from the challenged racketeering activity. In other words, the enterprise must exist for some purpose in addition to or other than the carrying out of the illegal conduct charged in the indictment. *United States v. Bledsoe,* 674 F.2d 647 (8th Cir.1982); *United States v. Lemm,* 680 F.2d 1193, 1198 (8th Cir.1982); *United States v. Anderson,* 626 F.2d 1358, 1372 (8th Cir.1980). This interpretation, of course, arises in part out of the expressed legislative intent of RICO to prevent the infiltration of legitimate existing businesses or unions by organized crime. But it goes beyond that as discussed below.

With regard to the "pattern of racketeering activity" element, the defendants contend that since the Indictment alleges but one scheme, it does not allege the "continuity" required to form a pattern of racketeering activity. *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 255 (8th Cir.1986); *Holmberg v. Morrisette,* 800 F.2d 205 (8th Cir.1986).

For its response, the government states that the indictment properly alleges the existence of both, a RICO enterprise and a pattern of racketeering activity. With regard to the enterprise element, the government contends that the enterprise as described in the indictment—"Southeastern

Fuels, Inc., Southeastern Fuels, a partnership, and Tennessee Fuels, Inc., together"—is an entity separate and distinct from the racketeering activity and satisfies the strict interpretation of "enterprise" followed in the Eighth Circuit.

The government states that the proof will establish that Southeastern Fuels Inc., which operated corporate offices at Rossville, Tennessee, West Memphis, Arkansas, and Marion, Arkansas, "was a duly filed Tennessee corporation with initially three incorporators, two of whom were unaware of the illegal activity being conducted by employees and officers of the corporation." But it must be kept in mind that the indictment does not identify Southeastern Fuels Inc., as the RICO "enterprise." The government contends that Tennessee Fuels, Inc., "was formed and operated at the direction of the officers and principals of Southeastern Fuels, Inc., and was nothing more than an office of the corporation operating under a different name in order to avoid certain cease and desist orders which had been issued against Southeastern Fuels, Inc., ... and for the purpose of giving the defendant, Bert Busch, an increased share of the investor purchase money." The government further contends that the West Memphis, Arkansas and Olive Branch, Mississippi offices were operated for the purpose of giving certain individuals, (namely, Bertsil Smith, Ken Baker, Dennis Moran and Jerry Chapman), a larger portion of the investor provided funds for their own benefit. The government argues that these organizations were formed to sell property in Tennessee for coal mining purposes and that the racketeering arises from the sale of the coal property fraudulently. Under the clear allegations of the Indictment, the two corporations and the partnership "together" constituted the RICO enterprise. It follows that until the last of these three legal entities was formed, the "enterprise" charged in the indictment could not have come into existence.

As to the defendants' claim that the "pattern of racketeering activity" element requires that more than one scheme be alleged, the government states that the pat-

726

tern charged here includes multiple criminal episodes and fraudulent efforts which are sufficient to satisfy the Eighth Circuit's requirement of multiple schemes. The government's view is that the individual predicate acts charged reflect a separate scheme to defraud each single investor.

The portions of the RICO statute under which the defendants were indicted state that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities of which affect, interstate or foriegn commerce, to conduct or participate, directly or indirectly, in tha conduct of such enterprises's affairs through a pattern of racketeering activitiy or collection of unlawful debt.

18 U.S.C. § 1962(c) (1984).

"[E]nterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

"[P]attern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

18 U.S.C. § 1961(4), (5) (1984).

*The Enterprise Element*

The Court agrees with the defendants' assertion that the government has not adequately alleged a RICO enterprise. The "enterprise" element is essential to a RICO claim. Without it, the indictment would only allege that the defendants participated in various criminal acts of mail fraud, wire fraud, and interstate transportation of stolen funds.

The 'enterprise' element provides an essential ingredient in the constitutionality of the composition and structure of section 1962(c) offense. Because a defendant may be separately prosecuted for

the two predicate crimes, ... only by requiring proof of an 'enterprise' that engages in or has activities affecting interstate or foreign commerce does section 1962(c) require proof of a fact other than facts required to prove the predicate crimes.

*United States v. Anderson,* 626 F.2d 1358, 1367 (8th Cir.1980).

Each element of the crime, that is, the predicate acts, the pattern of such acts, and the enterprise requirement, was designed to limit the applicability of the statute and separate individuals engaged in organized crime from ordinary criminals. The enterprise requirement must be interpreted in this light.

*United States v. Bledsoe,* 674 F.2d. 647, 663 (8th Cir.1982); *see also United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) (In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity.").

■ The Court believes that the instant indictment fails in that it does not allege that the defined enterprise, that is, the association of the legal entities known as "Southeastern Fuels, Inc., Southeastern Fuels, a partnership, and Tennessee Fuels, Inc., together" has a "discrete economic association existing separately from the racketeering activity." *Anderson,* 626 F.2d at 1372. In fact, the language of the indictment precludes such a possibility. "The term 'enterprise' must signify an association that is substantially different from the acts which form the 'pattern of racketeering activity.'" *Id.* at 1365. However, the indictment in this case supports the conclusion that the sole reason for the association among the three legal entities was to perpetuate the criminal activity that was already being carried out by one of them (Southeastern Fuels, Inc.), that is, the defrauding of investors though the use of mail fraud, wire fraud, and the interstate transportation of stolen funds in excess of $5000.00. Note the following language in the indictment:

B. Tennessee Fuels, Inc., was formed by and operated at the direction of the principals of Southeastern Fuels, Inc., in an effort to evade and circumvent Cease and Desist ordrs issued or to be issued against Southeastern Fuels, Inc., by the Securities Commission of several States within the United States.

C. Southeastern Fuels, a "partnership", operating in West Memphis, Arkansas and Southeastern Fuels, a "partnership" operating in Olive Branch, Mississippi were formed for the same purposes and operated in an identical manner to Southeastern Fuels, Inc.

*See* Indictment, Count I.

Furthermore, the Government almost admits in its response to the motion to dismiss that the enterprise was formed for the purpose of carrying out the racketeering acts charged in the Indictment:

Otherwise, and in all other respects, these latter three organizations operated identically to Southeastern Fuels, Inc. Each office had the same arrangement with L.D. McClendon for the purchase of land, the sale of which also was identical to the principal organization, Southeastern Fuels, Inc. Literature, sales representatives, and property in Tennessee were all part of the same sales program. These organizations were formed to sell property in Tennessee for coal mining purposes. The racketeering arises from the sale of this coal property fraudulently.

*See* Government's Response to Defendants' Motion to Dismiss, filed October 18, 1988. But as pointed out above, the language of the indictment specifically negates that two of the three entities forming the alleged enterprise ever existed for any purpose other than the carrying out of the challenged illegal fraudulent conduct. Indeed, it is nowhere made clear that Southeastern Fuels Inc., itself ever existed or operated for any purpose other than the carrying out of the scheme and artifice to defraud alleged by the Indictment.

In *Anderson, supra,* the Eighth Circuit explicitly stated that an "enterprise" consisting of "a group of individuals [or legal entities] associated in fact ... encompass[es] only an association having an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined apart from the commission of the predicate acts constituting the 'pattern of racketeering activity:' "

The motivating policy of the Act, to free our nation's economic system from the tentacles of organized crime, does not even suggest that Congress intended the definition of an enterprise to encompass a simple association to commit the predicate crimes constituting the pattern of racketeering activity. An expansive definition of the enterprise element of the offense grossly disrupts the balance between federal and state law enforcement efforts, and brings within the ambit of the statute offenses which Congress did not consider sufficiently threatening to our economy to warrant federal intervention. Indeed, the primary purpose of RICO could be displaced. There is no indication that Congress ever intended to grant federal prosecutors the flexibility to pursue relatively minor offenders, having no connection with organized crime, who simply associate to commit two of the predicate crimes.

*Anderson,* 626 F.2d at 1372.

The Indictment alleges no purpose for the alleged enterprise other than the carrying out of the illegal scheme. In the Court's opinion, the government's assertion that Southeastern Fuels, Inc., "was a duly filed Tennessee Corporation" is not enough. Even assuming that Southeastern Fuels, Inc., was a legitimate corporation, with other, reasons for its existence, the Indictment still does not allege, and the government has not shown the Court that *the alleged enterprise,* that is, "Southeastern Fuels, Inc., Southeastern Fuels, a partnership, and Tennessee Fuels, Inc., *together,*" existed in order to maintain operations towards an economic goal separate from the commission of the alleged predicate acts making up the pattern or racketeering activity. As did the Eighth Circuit in *Anderson,* the Court notes that this holding is not predicated on the notion that only

a "legitimate" association can constitute a RICO enterprise. It is clear that the Act applies to both legitimate and illegitimate enterprises. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (In enacting the Racketeer Influenced and Corrupt Organizations Act, Congress wanted to reach both "legitimate" and "illegitimate" enterprises). The Court interprets *Anderson* to mean that even where the government indicts a wholly illegitimate enterprise, it must still show an "ongoing" and "continuing" economic association that is separate and apart from the pattern of racketeering activity that is allegedly being engaged in by the enterprise in the RICO charge being considered. In other words, the enterprise must at least exist for some purpose—legitimate or illegitimate—in addition to carrying out the particular pattern of racketeering forming the basis for the RICO charge. *Contra United States v. Perholtz*, 842 F.2d 343, 363 (D.C.Cir.1988). Justice White's opinion in *Turkette, supra,* appears to make this point:

> A second reason offered by the Court of Appeals in support of its judgment was that giving the definition of 'enterprise' its ordinary meaning would create several internal inconsistencies in the Act. With respect to § 1962(c), it was said:
>
>> If 'a pattern of racketeering' can itself be an 'enterprise' for purposes of section 1962(c), then the two phrases 'employed by or associated with any enterprise' and 'the conduct of such enterprise's affairs through [a pattern of racketeering activity]' add nothing to the meaning of the section. The words of the statute are coherent and logical only if they are read as applying to legitimate enterprises. 632 F.2d [896], at 899 [ (1st Cir.1980) ].
>
> This conclusion is based on a faulty premise. That a wholly criminal enterprise comes within the ambit of the statute does not mean that a 'patten of racketeering activity' is an 'enterprise.' In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connect-

ed 'pattern of racketeering activity.' The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an *ongoing* organization, formal or informal, and by evidence that the various associates function as a *continuing* unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

*Turkette,* 101 S.Ct. at 2528–29 (footnote ommitted, emphasis added).

In the Court's opinion, any other interpretation of "enterprise" would render that element of RICO meaningless. For if all the government need show is "racketeering activity," that is, the commission of two or more of the enumerated acts that make up the required "pattern of racketeering activity," then there would be no need to prove an "enterprise" separate and distinct from the racketeering activity. But, as the authorities make clear, the "enterprise" element is absolutely essential to the Act, in that it distinguishes the extremely serious RICO allegation from what would otherwise be an allegation of, for instance, simple mail or wire fraud. *See Turkette; Anderson & Bledsoe, supra.* In the Court's opinion, Congress certainly did not intend that the substantially enhanced RICO penalites apply to the simple commission of two or more of the predicate acts listed in the Act. As the Eighth Circuit states in *Anderson,* such a scenario would

"pose difficult problems relating to the fifth amendment's guarantee against double jeopardy." 626 F.2d at 1367. The instant Indictment alleges no such "discrete economic association existing separately from the racketeering activity," and, on this ground, the RICO Counts must fall.

Also, the "enterprise" alleged does not even fit the statutory definition of "enterprise" in that there is no provision for a "group of legal entities" found within that definition:

> "[E]nterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

18 U.S.C. 1961(4). Although the plain language of the RICO Act provides that a "group of individuals" may constitute an enterprise, it does not state that a "group of legal entities," as alleged in the indictment herein may constitute such an enterprise. However, it appears that the Second Circuit, relying on a liberal interpretation of the Act, has interpreted the definition of "enterprise" to include a "group of corporations." *United States v. Huber*, 603 F.2d 387 (2d Cir.1979).

The Court respectfully disagrees. Congress' call for a liberal interpretation in order to effectuate the Act's "remedial purposes"[1] does not outweigh the Court's duty under the "rule of lenity" to construe criminal statutes strictly. *See Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). "[T]he 'touchstone' of the rule of lenity 'is statutory ambiguity.'" *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Furthermore, the Eighth Circuit has consistently enterpreted the RICO Act narrowly. *See* e.g. *Anderson, supra; Bledsoe, supra*. The Court agrees with the realistic approach taken by the Court in *United States v. Mandel*, 415 F.Supp. 997 (D. Md.1976). *Mandel*, involved an assertion by the government that governmental entities were included in the definition of "enterprise." The *Mandel* Court astutely recognized that the Act has both *punitive and remedial* purposes:

> In holding that 'enterprises' within the meaning of the statute are limited to private entities, the Court is compelled to disagree with the recent contrary holding in *United States v. Frumento*, 405 F.Supp. 23, 29–30 (E.D.Pa.1975). That case held that the Bureau of Cigarette and Beverage Taxes, in the Pennsylvania Department of Revenue, was an 'enterprise' within the meaning of the Act. The Court ... based its holding on the fact that Congress had instructed that the provisions of the Act should be 'liberally construed to effectuate its remedial purposes.'... *What the Court failed to note is that the Act, with its civil and criminal provisions, has both punitive and remedial purposes*. While Congress may instruct courts to give broad interpretations to civil provisions, it cannot require courts to abandon the traditional canon of interpretation that ambiguities in criminal statutes are to be construed in favor of leniency.

415 F.Supp. at 1021–22 (emphasis added, citations and footnotes ommitted). The Act's "Statement of Findings and Purpose" clearly sets forth that the Act is remedial *and* punitive in nature:

> It is the purpose of the Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, *by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies* to deal with the unlawful activities of those engaged in organized crime.

In *Anderson*, the Eighth Circuit analyzed the definition of "enterprise" as follows:

> The syntactical form of the section 1961(4) definition warrants application of the traditional maxim of statutory construction, *noscitur a sociis*. The definition sets forth two conjunctive phrases,

---

1. Section 904 of the Act provides: "The provisions of this title shall be liberally construed to effectuate it remedial purposes." *See* 1970 *U.S. Code Cong. & Ad.News* (84 Stat.) 1073, 1104.

listing the types of groups included in the definition of 'enterprise.' The first phrase describes legal entities: 'individual, partnership, corporation, association, or other legal entity.' The second phrase refers to nonlegal entities: 'any union or group of individuals associated in fact although not a legal entity.' ... We find that the general words [group of individuals] are *ejusdem generis* to the previous words defining types of groups which can constitute an enterprise. The meaning of the general phrase, 'group of individuals associated in fact although not a legal entity,' is thus controlled by the preceding specifically enumerated examples.

626 F.2d at 1366.

The Indictment herein alleges that a *group of legal entities* constituted the enterprise: "Southeastern Fuels, Inc., Southeastern Fuels, a partnership, and Tennessee Fuels, Inc., *together* constituted an 'enterprise' ... the activities of which affected interstate commerce." (Emphasis added). Congress wrote the first prong of section 1961(4) in the disjunctive, separately listing "individual," "corporation," "partnership," and "other legal entitity." In the second prong, wherein provision was made for a "union" or "group," Congress mentions only a "union or group of *individuals*" (emphasis added). No provision is made for a "group of legal entities" as alleged in the indictment. The rule of lenity requires that the Court hold that a "group of legal entities" is not included within the definition of "enterprise." Had it intended to include such "group of legal entities," Congress could have simply inserted the words "corporation or other legal entities" after the word "individuals" in the second prong. The Second Circuit, in *United States v. Huber, supra,* relies heavily on the word "includes" in the definition for its contrary position. But criminal statutes must give clear notice. Even if the language might, for civil purposes, permit such an interpretation, it is clearly too vague to support such a construction in the criminal law context. If Congress wishes to expand the definition to include a "group of corporations or other legal entities," it can. This Court may not, consistent with constitutional standards. Thus, the indictment must fall on this ground.

### The Pattern of Racketeering Activity

■ Likewise, the Court will dismiss the RICO Counts of the Indictment for failure to allege a "pattern of racketeering" activity as that term is currently defined in the Eighth Circuit:

[P]roof of a 'pattern of racketeering activity' requires more than one 'rackeetering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.

. . . . .

Superior Oil has, however, failed to prove the 'continuity' sufficient to form a 'pattern of racketeering activity.' The actions of Fulmer, Branch, and Nichols comprised one continuing scheme to convert gas from Superior Oil's pipeline. *There was no proof that Fulmer, Branch, or Nichols had ever done these activities in the past and there was no proof that they were engaged in other criminal activities elsewhere.*

*Superior Oil v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986) (emphasis added) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

In order to demonstrate the necessary continuity appellants must allege that Northwestern Bell 'had engaged in similar endeavors in the past or that [it was] engaged in other criminal activities.' A single fraudulent effort or scheme is insufficient.

*H.J. Inc. v. Northwestern Bell Telephone Co.,* 829 F.2d 648 (8th Cir.1987) (citations omitted).

Thus, in the Eighth Circuit, the "continuity" element of the "pattern of racketeering activity" is met only by the showing of more than one scheme to defraud. Although admitting that *Superior Oil* and *H.J., Inc.* state the current rule in the Eighth Circuit, the government states that United States Supreme Court is currently reviewing the multiple scheme rule and

that nevertheless, the indictment satisfies the Eighth Circuit rule inasmuch as it charges "multiple criminal episodes and fraudulent efforts." The Court disagrees. The indictment clearly charges but one scheme—the defrauding of coal mine investors, and, since the Supreme Court has not overturned the Eighth Circuit rule, the Court must apply it and dismiss the RICO indictment herein for failure to allege a pattern of racketeering activity.

### 2. Statute of Limitations or Delay in Bringing Prosecution

The defendants allege that the indictment was not brought within the five-year statute of limitations mandated in 18 U.S.C. § 3282 and that the government has not alleged that each of the defendants agreed to commit two predicate acts, one of which was within the five-year statute of limitations. For its response, the government contends that the statute of limitations does not bar this action since certain predicate acts were committed within five years of the date of the indictment.

■ The Court will dismiss Counts two and twenty-four on the grounds of timeliness. Although the general five year statute of limitations contained in 18 U.S.C. § 3282 applies to RICO actions, it has been held that an action timebarred under Section 3282 can be used as a predicate act for RICO purposes, so long as one of the purported predicate acts occurred within the five year limitations period. *United State v. Boffa*, 513 F.Supp. 444, 479 (D.Del.1980). The instant Indictment was brought on May 25, 1988. The predicate acts charged in Counts two and twenty-four, which also contain separate substantive criminal charges, are alleged to have occurred before May 25, 1983. These mail fraud charges would therefore be barred in any event. Furthermore, given the Court's dismissal of the RICO Counts of the Indictment, even the specious argument that the RICO Counts would extend the limitations period for such substantive charges is lost. The remainder of the substantive charges (predicate acts under RICO) are within the limitations period and will not be dismissed.

■ The defendants allege that the government unconstitutionally delayed bringing the Indictment in this action in order to gain a tactical advantage over them. Such delay, they allege, prejudices them in their efforts to gather information necessary to acquit themselves and thus warrants dismissal of the indictment. For its response, the government states that its bringing of the Indictment within the five-year statute of limitation raises a presumption that the delay was reasonable. The government contends that in order to overcome the presumption of reasonableness, the defendants must affirmatively allege substantial prejudice and must show that the delay was an "intentional tactic to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

The Court will not dismiss the Indictment for delay. In the Court's opinion, the defendants have not made an adequate showing of prejudice. Under *Marion, supra*, even allegations of loss of memory, inaccessible witnesses, and lost evidence are not sufficient where the government has brought the action within the prescribed statute of limitations. *Id.* at 325–26, 92 S.Ct. at 466.

The Court's dismissal of the RICO counts of the indicment make the defendants' other grounds for dismissal, multiple conspiracies and unconstitutionality of the forfeiture actions moot. The defendants' motion to bifurcate is also moot.

### GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL

■ The government seeks to disqualify Mr. Stephen B. Shankman, defendant Ken Baker's retained Counsel on the ground of multiple representation. In support of its motion, the government states that Mr. Shankman represented former defendant David Judd. On November 4, 1988, Mr. Judd pled guilty to a superceding felony information in this action. The government states that pursuant to his plea agreement, Mr. Judd has provided information damaging to defendant Ken Baker and will testify adversely to said defendant.

**732**

Mr. Judd was previously convicted in similar cases by a jury verdict in the Northern District of Mississippi wherein he was represented by Mr. Shankman and by plea of guilty in the Northern District of Florida. The government states that Mr. Shankman has appealed the the Mississippi conviction for Mr. Judd.

During the pre-trial conference held November 15, 1988, Mr. Shankman stated that there is no problem with him representing both defendant Ken Baker and witness David Judd. Mr. Shankman futher stated that there is no connection between Mr. Baker and Mr. Judd other than a brief period of working together as salesmen and that he has learned nothing in his representation of Mr. Judd that he would of necessity be required to cross-examine him about to enure to Mr. Baker's benefit.

The Court will grant the government's motion to disqualify. The risks inherent in such multiple representation are too great to ignore. Although Mr. Shankman has represented that he knows of no conflict that could arise in his representation of the these two men, the Court is of the opinion that given the government's statement that Mr. Judd has provided information damaging to Mr. Baker and will testify in this matter against him, the risk of a conflict detrimental to defendant Baker's Sixth Amendment right to effective counsel is imminent. Therefore, Mr. Shankman will be disqualified.

IT IS THEREFORE ORDERED that the defendants' motions to dismiss for failure to adequately allege a RICO "enterprise" or "pattern of racketeering activity" be, and they are hereby, granted.

IT IS FURTHER ORDERED that the defendants' motions to dismiss on the grounds of statute of limitations or delay in bringing the Indictment be, and they are hereby, granted as to Counts two and twenty-four, and denied as to the remaining Counts.

IT IS FURTHER ORDERED that the defendants' motions to dismiss on the basis of multiple conspiracies be, and they are hereby, dismissed as moot.

IT IS FURTHER ORDERED that the defendants' motions to dismiss the forfeiture actions be, and they are hereby, dismissed as moot.

IT IS FURTHER ORDERED that the defendants' motions to bifurcate the forfeiture issues be, and they are hereby, dismissed as moot.

IT IS FURTHER ORDERED that the defendants' motions to bifurcate the RICO charges and to submit same on special interrogatories be, and they are hereby, dismissed as moot.

IT IS FURTHER ORDERED that government's motion to disqualify Mr. Stephen Shankman, retained counsel for defendant Ken Baker, be and it is hereby, granted.