UNITED STATES of America, Plaintiff–Appellee,

v.

Meyer BLINDER, Defendant–Appellant.

No. 92–10584.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1993.

Decided Dec. 2, 1993.

Stanley H. Marks, Richard A. Hostetler, Denver, CO, for defendant-appellant.

Howard J. Zlotnick, Joseph P. Dion, Asst. U.S. Attys., Las Vegas, NV, for plaintiff-appellee.

Before: WALLACE, Chief Judge, and D.W. NELSON and O'SCANNLAIN, Circuit Judges.

D.W. NELSON, Circuit Judge:

Meyer Blinder ("Blinder") appeals from his convictions and sentence for securities fraud, unlawful distribution of securities, and violations of the substantive and conspiracy provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO).[1] Blinder

---

1. RICO states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (1988). RICO fur-

contends that the district court erred by (1) denying his various motions to dismiss; (2) denying his motions for judgment of acquittal or a new trial; (3) misstating jury instructions; and (4) refusing to consider his ability to pay the court-imposed fine. We reject these arguments and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 15, 1985, Blinder, Arnold L. Kimmes ("Kimmes"), and Michael D. Wright ("Wright") entered into an agreement concerning Blinder's securities brokerage firm, Blinder Robinson & Co., Inc. ("Blinder Robinson"). Upon demand and at prearranged prices, Kimmes and Wright were to provide substantially all of the securities for "blind pool" corporations.[2] The blind pool corporations were created and secretly controlled by Kimmes and Wright, who used figurehead officers and false registration statements to disguise their actual control. Blinder Robinson subsequently obtained one hundred percent of the securities of two blind pool corporations, Onnix Financial Group, Inc. and Executive Capital, Inc.

Blinder Robinson sold the blind pool corporations' securities to its customers without informing them that the purportedly initial "public offering" of the blind pool securities was a sham. Additionally, Blinder Robinson failed to provide the purchasers of the blind pool stock with prospectuses. Because the buying public was unaware of Blinder's secret agreement, Blinder Robinson's unlimited access to the securities of Kimmes's and Wright's corporations effectively created a rigged market. As a result, Blinder profited through riskless transactions and arbitrarily established prices.

A federal grand jury indicted Blinder and other defendants on February 23, 1990, charging violations of RICO's conspiracy and substantive provisions. The government filed a superseding indictment, charging securities fraud and unlawful distribution of securities in violation of 15 U.S.C. §§ 77e, 77q and 77x, against Blinder and other defendants on October 29, 1991. On July 2, 1992, Blinder unsuccessfully moved for acquittal. On July 10, 1992, a jury found Blinder guilty of counts one through six, which included racketeering conspiracy, racketeering, securities fraud, and unlawful distribution of securities. The district court denied Blinder's post-verdict motion for acquittal or a new trial. Blinder was sentenced to 46 months incarceration and fined $100,-000. He timely appealed. We have jurisdiction under 28 U.S.C. § 1291 (1988).

## ANALYSIS

### I. *Motion to Dismiss*

We review a district court's decision to deny a motion to dismiss an indictment based on its interpretation of a federal statute *de novo. United States v. Dahms*, 938 F.2d 131, 133 (9th Cir.1991). The sufficiency of an indictment is judged by "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). For purposes of review, "[t]he allegations of the indictment are presumed to be true." *Id.* An indictment should be: "(1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *Id.* at 899.

Blinder argues that counts one and two were insufficient on the following grounds: (1) they did not adequately allege predicate acts of racketeering activity based on securities fraud; (2) they did not adequately allege sufficient predicate acts in relation to wire fraud; (3) they impermissibly alleged an enterprise consisting solely of a group of entities; (4) they failed to allege the existence of an enterprise separate from the racketeering activity; and (5) they fail because the RICO

---

ther makes it "unlawful for any person to conspire to violate" this subsection. *Id.* § 1962(d).

**2.** A blind pool corporation does not have an independent business purpose, but is created to merge with another private company that possesses a business purpose and requires additional capital.

statute is unconstitutionally vague. In addition, Blinder contends that counts three and four were unconstitutionally vague, and that counts five and six failed to demonstrate sufficiently that no exceptions to the charged offense applied.

### A. *Predicate Acts in Relation to Securities Fraud*

■ Violations of RICO require the commission of a minimum of two specified predicate acts. 18 U.S.C. § 1961(5) (1988). Predicate acts that may serve as racketeering activity include *"fraud* in the *sale* of securities." 18 U.S.C. § 1961(1)(D) (1988) (emphasis added). Blinder argues that counts one and two of the indictment are defective because they allege predicate acts of "purchase and sale" or "offer and sale" of securities, rather than simply "sale." Blinder argues that it is possible that the jury could have found (1) that there was a purchase and sale of securities, or an offer and sale of securities, and (2) that a fraud was committed. Blinder contends that this could effectively criminalize acts that are not specified in section 1961(1)(D). We disagree.

Blinder's interpretation belies our requirement of construing indictments according to common sense and reading them as a whole. *Buckley,* 689 F.2d at 899. First, it is doubtful that the jury could have misconstrued the indictment to mean that Blinder engaged in fraud in the purchase or offer of securities, exclusive of the sale. Blinder claims that the phrase "offer and sale of securities" was potentially misleading; however, the overall phrase in question refers to "a fraud and deceit upon the purchaser in the offer and sale of securities," and paragraph 16 of the superseding indictment clearly states that "[t]he victims of this racketeering activity included *purchasers* of the securities of . . . [the] 'blind pool' corporations from Blinder Robinson" (emphasis added). Thus, there is no doubt as to the identity of the purchasing victim of the racketeering activity. Although Blinder argues that the "purchase" in question was actually Blinder Robinson's purchase of the stock from Kimmes and Wright, a common sense reading of the word "offer"

can only lead to the conclusion that it is mere surplusage to the word "sale."

By separating the sale, purchase, and offer prong from the fraud prong of section 1961(1)(D), Blinder tries to argue that the jury believed that any undefined "fraud" would suffice to meet the indictment requirements. The extensive factual allegations of the superseding indictment, however, make clear that the fraud in question is securities fraud and that the transaction in question is Blinder Robinson's sale of stock to its unknowing customers.

In fact, the counts that used the phrase "the purchase and sale of securities" did not even refer to Blinder, but only to acts committed by his co-defendants. Therefore, we pursue this matter no further. Blinder also contends that the indictment wrongly alleges fraud "in connection with" the sale of securities, whereas section 1961(1)(D) refers only to fraud "in the sale of securities." Again, however, this phrase is used only in reference to defendants other than Blinder. Therefore, we need not address this argument.

Finally, Blinder argues that a nominee who parts with no money himself does not "participate" in *fraud in the sale of securities.* Blinder cites no authority for this reasoning. Moreover, Blinder also was convicted of participating in racketeering acts consisting of sales to his customers. Thus, we need not reach the question of whether a hypothetical nominee who fraudulently buys or "sells" her shares without compensation qualifies as a racketeer.

### B. *Predicate Acts in Relation to Wire Fraud*

■ We have held that wire fraud has three elements: (1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud. *See United States v. Bonallo,* 858 F.2d 1427, 1433 (9th Cir.1988). The superseding indictment alleges these three elements. Although Blinder cites a case from our circuit, *First Pacific Bancorp, Inc. v. Bro,* 847 F.2d 542, 546–47 (9th Cir.1988), to support his position that wire fraud allegations must also allege pecuniary loss, that

case is distinguishable. *Bro*'s ruling on the pecuniary loss requirement dealt explicitly with *mail fraud;* the court's discussion of *wire fraud* did not reach the pecuniary loss issue. *Id.* at 547. Moreover, even if *Bro* were applicable, we have stated, as previously noted, that an indictment should be "read as a whole" and "read to include facts which are necessarily implied." *Buckley,* 689 F.2d at 899. The indictment fairly alleges that Blinder Robinson's customers suffered monetary loss from arbitrarily established prices. One of the purposes of the racketeering conspiracy was to obtain money and other things of value. Because the indictment notes that Blinder's victims were customers who purchased blind pool securities from Blinder Robinson, one can reasonably infer that these victims suffered pecuniary loss because of Blinder's fraudulent trading practices.

■ Finally, Blinder's cramped interpretation of pecuniary loss is incorrect if taken in context. In *Bro,* we cited *United States v. Dixon,* 536 F.2d 1388 (2d Cir.1976), for the proposition that a conviction for mail fraud cannot be sustained "on the basis of nothing more than the failure to mail a correct proxy solicitation where this was not in furtherance of some larger scheme contemplating pecuniary loss to someone *or* direct *pecuniary gain* to those who designed it." *Id.* at 1399 (emphasis added). Thus, pecuniary gain, as well as loss, will satisfy the requirement.

### C. *Enterprise Consisting Solely of Entities*

■ A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (1988). Blinder claims that the term "individual" within the definition of a RICO enterprise in section 1961(4) refers to living persons only and not to legal entities or corporations. However, Blinder's claim is contrary to the associated-in-fact enterprise we found in *United States v. Feldman,* 853 F.2d 648 (9th Cir.1988), *cert. denied,* 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989), which consisted of two individuals and seven corporations, *id.* at 655–56. If a corporation

can form *part* of an "associated in fact" enterprise, *a fortiori,* a group of corporations should be able to constitute the entire enterprise. Moreover, we are persuaded by the reasoning of *United States v. Huber,* 603 F.2d 387 (2d Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), that the term "enterprise" should be construed broadly to include an association of legal entities, *see id.* at 394. Thus, although we have not addressed previously whether a group or union consisting *solely* of corporations or other legal entities can constitute an "associated in fact" enterprise, we now hold that it does.

### D. *Existence of A Separate Enterprise*

■ Blinder further claims that the indictment offered no facts to demonstrate that the purported enterprise had any existence apart from the racketeering activity in which it engaged. The government responds that, under the law of this circuit, they are not required to plead facts supporting the separate existence of the enterprise, and, in any event, the separate existence of the enterprise was adequately proven at trial.

*United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), established that a RICO enterprise must be "an entity separate and apart from the pattern of [racketeering] activity in which it engages," *id.* at 583, 101 S.Ct. at 2529. We have previously noted that the circuits are split over whether this requires proof that the RICO enterprise has an " 'ascertainable structure' *distinct from* that inherent in the conduct of a pattern of racketeering activity," *e.g., United States v. Bledsoe,* 674 F.2d 647, 665 (8th Cir.) (emphasis added), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982), or is satisfied even when "the enterprise was, in effect, no more than the sum of the predicate racketeering acts," *e.g., United States v. Bagaric,* 706 F.2d 42, 55 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983), but have, in each instance, found it unnecessary to take a position in the debate. *See Feldman,* 853 F.2d at 660; *United States v. Kirk,* 844 F.2d 660, 664 (9th Cir.), *cert. denied,* 488 U.S. 890, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988); *United*

*Energy Owners Committee, Inc. v. United States Energy Management Sys., Inc.,* 837 F.2d 356, 363–64 (9th Cir.1988). Because we find that our earlier interpretation of the more stringent "separate existence" test has been met, we again decline the invitation.[3]

The indictment in this case alleges an enterprise comprised solely of legal entities. In *United Energy Owners Committee, Inc. v. United States Energy Management Sys., Inc.,* 837 F.2d 356 (9th Cir.1988), we held that, when the enterprise alleged was a *single* legal entity, the existence of that entity fulfilled the higher standard that "the enterprise have an ascertainable structure apart from the racketeering activity." *Id.* at 363 (citing *Bennett v. Berg,* 685 F.2d 1053, 1060–61 (8th Cir.1982) ("Legal entities are garden-variety 'enterprises' which generally pose no problem of separateness from the predicate acts."), *adopted upon reh'g en banc,* 710 F.2d 1361 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983)). That case, however, also involved a *second,* "associated in fact" enterprise,[4] that included a number of corporate defendants. Finding that the conduct of "at least one" of the defendant entities was "alleged to include legal activities," we reasoned that "the enterprise comprised of the whole was at least *somewhat separate* from the defendants' con-

ducting of the racketeering activity within it"; moreover, this conclusion appeared sufficient to meet the more stringent "separate existence" standard. *United Energy Owners,* 837 F.2d at 364–65 (emphasis added).[5]

Thus, after *United Energy Owners* it was unclear that, in an "associated in fact" enterprise, the mere existence of the legal entity *vel non* automatically met the "separate existence" test. Although two subsequent cases can be read as taking such a position, *see Kirk,* 844 F.2d at 664; *Feldman,* 853 F.2d at 660,[6] we need not reach that particular question because the test we derive from *United Energy Owners* has been met.

The indictment in this case alleged that the enterprise included "a group of entities associated in fact which included, among others, Blinder Robinson & Co., Inc., Stoneridge Securities, Inc., Chelsea Securities, SBB, Inc., Executive Capital, Inc., and Onnix Financial Group, Inc." Moreover, it is a fair implication from the indictment that Blinder Robinson and Stoneridge engaged in activities *other* that those predicate acts that involved the three blind-pool corporations because both are alleged to be "securities brokerage[s]" with extensive operations. Moreover, Blinder Robinson and Stoneridge were involved with the public offering of several

---

**3.** We also reject Blinder's argument that no facts were alleged that could demonstrate that the purported enterprise possessed a decision-making structure or that the various associates each performed a role consistent with such a decision-making structure. The complaint discusses in great detail the roles played by Blinder, Wright and Kimmes in manipulating the corporate entities alleged to comprise the enterprise, and these activities continued over a four year period and involved the formation and sale of twelve blind pool companies.

**4.** As previously noted, RICO distinguishes between enterprises that are composed of a single "individual, partnership, corporation, association, or other legal entity" and "associated in fact" enterprises. *See* 18 U.S.C. § 1961(4) (1988).

**5.** Although we also noted in that case that the joint-venture alleged as the second enterprise "existed separately from the alleged racketeering activity," *United Energy Owners,* 837 F.2d at 363, this seems an alternative to our statement that the legal activity of one of the entities was probative of separate existence, *see id.* at 364; *cf. Feldman,* 853 F.2d at 660 ("Legal activity is also

probative of a separate existence." (citing *United Energy Owners,* 837 F.2d at 364)).

**6.** In *Kirk,* separate existence under the more stringent test was found based upon both (1) "the existence of a corporation," and (2) that the government "presented evidence of several lawful entities existing separately from the racketeering activities." *Kirk,* 844 F.2d at 660. In *Feldman,* the court, although noting that "[t]he corporate entities [alleged in the enterprise] had a legal existence separate from their participation in the racketeering, and the very existence of a corporation meets the requirement for a separate structure," *Feldman,* 853 F.2d at 660 (citing *Kirk,* 844 F.2d at 664), ultimately concluded that the corporate entities together "comprised … Feldman's 'business interests' " and existed "for the purpose of making money…. The illegal purposes to which Feldman put them were subsidiary to that legitimate goal." *Id.* Additionally, the Feldman court noted that "[t]hose corporations created by Feldman that could be construed as existing only to defraud creditors … were not charged as part of the enterprise." *Id.*

other blind pool corporations that were never alleged to have been the subject of predicate acts. These activities are more than sufficient to meet the *United Energy Owners* court's articulation of the "separate existence" test.

Blinder, however, cites *United States v. McClendon*, 712 F.Supp. 723 (E.D.Ark.1988) for the proposition that the more stringent test is met only when an indictment alleges that the entities that comprise the alleged enterprise *"together*, existed in order to maintain operations towards an economic goal separate from the commission of the alleged predicate acts making up the pattern o[f] racketeering activity," *id.* at 727 (emphasis in original). *McClendon*, however, has neither been adopted nor approved of by the Eighth Circuit; indeed, it has not been cited by *any* court. Moreover, *McClendon's* discussion of "separate existence" is arguably dicta because the court also found that the enterprise there in question, alleged to consist solely of legal entities, did not fall within RICO's definition of "associated in fact" enterprises. *See id.* at 729–30. Thus, we decline to find *McClendon* relevant legal authority.

■ Even if it were, we believe its reasoning would be inapplicable to the facts of this case. *McClendon* involved an enterprise between one corporate entity, which was conceded to engage in conduct other than the relevant predicate acts, and two entities *both* of which were alleged to be formed *for the purposes* of engaging in the alleged predicate acts. *See McClendon*, 712 F.Supp. at 727. In short, *all* the constituent enterprises did *together* was engage in fraud. By contrast, the complaint in this case can be read as alleging an enterprise consisting of the brokerage houses, the blind pool companies that were involved in the alleged predicate acts,

*and* blind pool companies that, although controlled by the defendants, were *not* charged as involved in the racketeering.[7] The essence of the enterprise, then, which we take from *McClendon* to consist of the *common link* between *all* the involved entities, was the identical means by which the constituent blind pool companies were formed and taken public through Blinder Robinson. Viewed in this manner, the enterprise alleged and proven at trial did "maintain operations *toward*[ ] an economic goal separate from the commission of the alleged predicate acts," *id.* at 727 (emphasis added), that is, the bringing public of the blind pool companies that were not the subject of the predicate offenses. A contrary conceptualization of the enterprise would find no "separate existence" even if only one of ten thousand similarly created and underwritten blind pool corporations was the subject of the predicate acts. Nothing in *McClendon* or the cases upon which it is based requires such a result.

### E. *Constitutionality of RICO*

■ Blinder argues on various grounds that RICO is unconstitutionally vague. However, we have previously upheld the constitutionality of RICO against such an attack. *United States v. Dischner*, 974 F.2d 1502, 1511 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993); *United States v. DeRosa*, 670 F.2d 889 (9th Cir.), *cert. denied*, 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1982). Thus, this constitutional attack must fail.

### F. *Application Of Exceptions*

■ Blinder claims that the indictment fails to note the exceptions to the statutory requirement that a prospectus must be delivered to buyers of securities. Alleging that he falls under one such exception,[8] Blinder

---

7. The indictment provides that the enterprise consisted of the firms involved in the predicate racketeering acts (the securities houses and three of the blind pool firms), but that the enterprise was not *limited* to those firms. Moreover, the indictment discusses the existence of a number of other blind pool firms that were not alleged to be involved in the racketeering, but which were situated no differently in the scheme than the blind pool companies that *were* the subject to the predicate acts. Consequently, these other blind

pool companies can fairly be included within the enterprise alleged. By contrast, the indictment in *McClendon* appears to have been expressly limited to the three entities there considered. *See McClendon*, 712 F.Supp. at 730.

8. Blinder, who assumes that he falls under the definition of the term "dealer," alleges that the various exceptions for dealers contained in 15 U.S.C. § 77d make the prospectus requirement

claims that his company was not required to deliver prospectuses to its customers. Blinder asserts that the government has the burden of alleging that no exception applied to the elements of an offense. Blinder is simply wrong. An indictment that sets forth all the essential elements of a crime need not also negate the statutory exceptions to the offense. *United States v. Hester,* 719 F.2d 1041, 1042 (9th Cir.1983). Moreover, the burden of alleging the exception is with the defendant. *Id.* at 1043. Thus, this argument must fail.

### G. *Predicate Act and Enterprise Vagueness*

■ An indictment must "set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the specific offense with which he is charged." *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir.1979). "An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense." *United States v. Givens,* 767 F.2d 574, 584 (9th Cir.), *cert. denied,* 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985).

Blinder argues that the indictment impermissibly tracks the statutory language in counts one through four. The indictment taken as a whole, however, reveals in great factual detail the elaborate scheme to defraud Blinder's customers, and incorporates the factual allegations in each of the four counts. Thus, particular facts were described adequately in the indictment.

Moreover, Blinder cites *Cecil* to support his allegation that an indictment tracking the language of a statute is valid only if it includes all of the elements of the offense. The indictment in *Cecil,* however, was invalidated not because it failed to allege all of the needed elements, but rather because it lacked "factual particularity." *Cecil,* 608 F.2d at 1297. As stated above, the instant indictment's statement of facts was more than sufficient; moreover, the indictment also correctly cited all the essential elements.

■ Finally, Blinder argues that the indictment fails to identify all the brokers who made misleading statements. An indictment, however, need only set forth the essential facts necessary to inform the defendant of what crime she is charged; it need not explain all factual evidence to be proved at trial. *United States v. Markee,* 425 F.2d 1043, 1047 (9th Cir.), *cert. denied,* 400 U.S. 847, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). The indictment charged the defendants with omissions of material facts; detailed explanations of the omissions need not be alleged. Thus, the district court's denial of Blinder's motions to dismiss because of the insufficiency of an indictment is affirmed.

### II. *Motion for Judgment of Acquittal or in the Alternative Motion for a New Trial*

■ We review the sufficiency of evidence "in the light most favorable to the Government to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mason,* 902 F.2d 1434, 1441 (9th Cir.1990) (internal quotations omitted). An appellate court " 'must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict.' " *United States v. Gillock,* 886 F.2d 220, 222 (9th Cir.1989) (quoting *United States v. Ramos,* 558 F.2d 545, 546 (9th Cir.1977)). A denial of a motion for a new trial is reviewed for abuse of discretion. *United States v. George,* 960 F.2d 97, 101 (9th Cir.1992). The defendant carries a significant burden to show that the district court abused its discretion in denying the motion for a new trial. *United States v. Endicott,* 869 F.2d 452, 454 (9th Cir.1989).

■ First, Blinder contends that he lacked knowledge of the racketeering activities. Second, he argues that the evidence

---

of § 77c(b)(2) inapplicable to his transactions. The government, however, convincingly characterizes Blinder Robinson as an "underwriter."

Accordingly, we believe that none of the § 77d exceptions apply.

failed to show the separate existence of a RICO enterprise.

Blinder claims he was ignorant of the fraudulent scheme. He states that he was not aware that Wright was anything but a legitimate promoter and that he considered his own business practices proper. As support, Blinder claims that his company was always at risk of paying higher prices for Wright's stock. On the other hand, the government alleged that Wright told Blinder that he was using figurehead officers. Moreover, the memo breakdown of SBB, Inc.'s capital structure is highly probative of Blinder's prearranged pricing and unlimited supply scheme. Accordingly, based on all of the Government's allegations, a rational trier of fact could have found that Blinder engaged in riskless transactions. We agree and affirm on this basis.

### III. Jury Instructions for both RICO Conspiracy and Substantive RICO

■ We review de novo whether a jury instruction misstates the elements of a crime. *United States v. Johnson*, 956 F.2d 197, 199 (9th Cir.1992). We examine whether the jury instructions overall are misleading or inadequate to guide the jury's deliberation. *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir.1991). Blinder argues that the instructions omitted a *mens rea* element and neglected to state that the defendant must agree to commit personally at least two racketeering acts.

Blinder claims that the RICO conspiracy jury instruction misstated the elements of the offense by failing to instruct that Blinder had to agree personally to commit at least two racketeering acts. We need not address this issue further, for in *United States v. Tille*, 729 F.2d 615, 619 (9th Cir.), cert. denied, 469 U.S. 845, 848, 105 S.Ct. 156, 164, 83 L.Ed.2d 93, 100 (1984), we rejected the requirement that a defendant participate personally in two predicate offenses. "The essence of a RICO conspiracy is not an agreement to commit racketeering acts, but an *agreement* to conduct or participate in the affairs of an enterprise through a pattern of racketeering." *United States v. Brooklier*, 685 F.2d 1208, 1216 (9th Cir.1982) (emphasis

added), cert. denied, 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983).

■ The RICO statute does not discuss *mens rea*. See *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 908 (3d Cir.1991). Blinder argues that the jury instructions omitted the mental element of substantive RICO; however, he offers no case law that supports his view that *mens rea* must be explicitly stated in the RICO jury instructions. Moreover, the Second Circuit has held that "RICO imposes no additional mens rea requirement beyond that found in the predicate crimes." *United States v. Biasucci*, 786 F.2d 504, 512 (2d Cir.), cert. denied, 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986). Finally, we note that the jury was properly instructed concerning the *mens rea* element of each predicate act charged. Thus, we reject this challenge as well.

### IV. Cost of Incarceration and the Defendant's Ability to Pay

■ The district court's factual conclusions at sentencing are reviewed for clear error. *United States v. Wills*, 881 F.2d 823, 825 (9th Cir.1989). The sentencing guidelines state that the defendant has the burden of proving that he is unable to pay a fine. *United States v. Rafferty*, 911 F.2d 227, 232 (9th Cir.1990); Sentencing Guidelines § 5E4.2(f).

Blinder has moved to supplement the record with information demonstrating his inability to pay the imposed fine. Federal Rule of Appellate Procedure 10(a) states that the appellate record consists of the original papers and exhibits filed in the district court. Blinder's supplemental information, however, was neither filed nor presented to the district court during or after Blinder's sentencing. Moreover, we have previously held that "[p]apers submitted to the district court *after* the ruling that is challenged on appeal should be stricken from the record on appeal." *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir.1988). Thus, we deny Blinder's motion to supplement the record.

■ Addressing Blinder's arguments that he is unable to pay the fine, he argues that the trial court erred in failing to make any

findings regarding his ability to pay and the actual cost of incarceration. Blinder also claims that the trial court abused its discretion in finding that he could pay given his uncertain financial status.

The presentence report indicates that Blinder did not provide the requested personal financial statement. Based on Blinder's affidavit to the U.S. Bankruptcy Court, which reported that he has assets in the Far East, the presentence report concluded that Blinder is capable of satisfying the fine. Because we cannot accept Blinder's supplemental materials, there is no evidence in the record to substantiate his financial claims. Blinder has not met his burden. We therefore affirm the fine and cost of incarceration.

## CONCLUSION

We affirm the district court's denial of Blinder's motions for dismissal as well as the denial of the motions for judgment of acquittal or a new trial, the jury instructions, the fine, and cost of incarceration. Blinder's motion to supplement the record is also denied.

The judgment of the district court is thus AFFIRMED.