2012 COA 56

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Benjamin L. DAVIS, Defendant–Appellant.**

**No. 08CA0156.**

Colorado Court of Appeals, Div. VII.

April 12, 2012.

---

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

¶ 1 Defendant, Benjamin L. Davis, appeals his judgment of conviction entered on a jury verdict finding him guilty of violating the Colorado Organized Crime Control Act (COCCA), §§ 18–17–101 to –109, C.R.S.2011, conspiracy to commit assault in the second degree, assault in the second degree, and two counts of solicitation of second degree assault. He also appeals his conviction as a habitual criminal and his 108–year sentence.

¶ 2 To establish a COCCA violation, the prosecution must show that two or more acts of racketeering activity occurred within a ten-year period. In keeping with analogous federal precedent, we hold, as a matter of first impression in Colorado, that so long as one predicate act of racketeering activity falls within the relevant statute of limitations, other predicate acts occurring within ten years prior to that act may be used to establish a COCCA violation, even if the earlier acts would be time-barred if prosecuted separately.

¶ 3 We affirm defendant's convictions, affirm the sentence in part and vacate it in part, and remand for the trial court to determine whether defendant's sentence on the COCCA conviction should run consecutively to or concurrently with the sentences for his prior convictions.

## I. Background

¶ 4 In 1995, defendant pled guilty to two counts of aggravated robbery and one count of first degree assault. He has remained in the custody of the Department of Corrections since that time.

¶ 5 In 2004, the prosecution filed a complaint against nineteen people, alleging that they were members of a gang called the 211 Crew. The prosecution alleged that defendant was the leader, or "shot caller," of the 211 Crew, and that he communicated with other gang members through coded and uncoded letters. The indictment alleged that defendant had participated in several acts of racketeering, evidence of thirteen of which was presented at trial, including involvement with two assaults, the solicitation of two additional assaults, and the distribution of controlled substances.

¶ 6 In addition to the COCCA count, defendant was charged with solicitation of second degree assault, conspiracy to commit second degree assault, and second degree assault based on a complicity theory in connection with an assault on C.H. C.H. was a member of the 211 Crew incarcerated at the Sterling Correctional Facility who Davis believed had violated 211 Crew rules. C.H. was attacked by two fellow 211 Crew members who were armed with a shank and a padlock. C.H. received a puncture wound to the back of his head.

¶ 7 Defendant was also charged with soliciting T.M. to commit second degree assault. The prosecution alleged that defendant solicited T.M. by sending him a letter.

¶ 8 Following a trial, a jury found defendant guilty of each offense. The trial court then determined that defendant is a habitual criminal and sentenced him to 108 years in the Department of Corrections. It ordered that this sentence be served consecutively to the sentence defendant was serving for his 1995 convictions.

¶ 9 On appeal, defendant argues that (1) there was insufficient evidence to support any of his convictions; (2) the trial court erred by qualifying a police officer as an expert and failing to limit the scope of his testimony; (3) the trial court erroneously allowed evidence of two codefendants' guilty pleas; (4) the trial court adjudicated him a habitual criminal in violation of his right to confrontation and his right to a jury trial; and (5) the trial court erred by determining that it was required to order defendant's COCCA sentence be served consecutively to the sentences he was already serving.

## II. Sufficiency of the Evidence

¶ 10 Defendant contends that there was insufficient evidence to support his convic-

tions arising from the assault on C.H. and his conviction for soliciting T.M. He then contends that because the evidence was insufficient to support these convictions, the evidence is also insufficient to support his COCCA conviction. We disagree.

¶ 11 We review a sufficiency of the evidence claim de novo. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005).

¶ 12 When determining the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact could accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988); *People v. Warner,* 251 P.3d 556, 564 (Colo.App.2010). We must give the prosecution the benefit of every reasonable inference that may be fairly drawn from the evidence. *Kogan,* 756 P.2d at 950.

¶ 13 Where a sufficiency of the evidence argument turns on a question of statutory interpretation, we endeavor to effectuate the intent of the General Assembly, which is charged with defining criminal conduct and establishing the legal components of a crime. *People v. Vecellio,* 2012 COA 40, ¶ 14, 292 P.3d 1004. We begin with the plain language of the statute, reading the words and phrases in context and construing them according to their common usage. *Id.* If the statutory language is clear and unambiguous, we apply it as written without resort to further statutory analysis. *Id.*

### A. Assault on C.H.

¶ 14 Defendant contends that the evidence was insufficient to support his convictions for solicitation to commit second degree assault, second degree assault under a theory of complicity, and conspiracy to commit second degree assault, all in connection with the attack on C.H.

¶ 15 A defendant is guilty of solicitation under section 18–2–301(1), C.R.S.2011, if he or she "(1) ... attempts to persuade another person to commit a felony, (2) with the intent to promote the commission of the crime, and (3) under circumstances strongly corroborative of that intent." *Melina v. People,* 161 P.3d 635, 640 (Colo.2007).

¶ 16 In order to be complicit in the commission of a crime pursuant to 18–1–603, C.R.S.2011, a defendant must "have knowledge that the principal intends to commit the crime, must intend to promote or facilitate the commission of the offense, and must aid, abet, advise, or encourage the principal in the commission or planning of the crime." *People v. Duran,* 272 P.3d 1084, 1091 (Colo. App.2011) (citing *Bogdanov v. People,* 941 P.2d 247, 253–54 n. 10 (Colo.1997), *disapproved of on other grounds by Griego v. People,* 19 P.3d 1 (Colo.2001)).

¶ 17 Finally, to convict a defendant of conspiracy pursuant to section 18–2–201(1), C.R.S.2011, the prosecution must show that there was " '(1) a real agreement, combination, or confederation with a common design; (2) between two or more persons; (3) to accomplish an unlawful purpose which amounts to a crime.' " *People v. Williams,* 707 P.2d 1023, 1025 (Colo.App.1985) (quoting *People v. Albers,* 196 Colo. 66, 67, 582 P.2d 667, 667 (1978)). Evidence, direct or circumstantial, that each conspirator performed a part of a plan with the purpose of attaining a common objective is generally sufficient to prove a conspiracy. *Id.* (citing *Goddard v. People,* 172 Colo. 498, 504, 474 P.2d 210, 213 (1970)).

¶ 18 At trial, the prosecution presented a coded letter sent by defendant to a fellow 211 member. The letter stated that C.H. was gay and in code stated, "[C.H.] got cut early this year already for turning in [211 Crew members] to the man! ... Dude needs to get hit." The recipient of this letter testified that he ordered two 211 Crew members to carry out the assault on C.H., which they did.

¶ 19 In addition to this direct evidence of defendant's involvement in the assault on C.H., former and current 211 Crew members testified that:

• Defendant was a founding member of the 211 Crew and acted as the gang's shot

caller, meaning that only he could order an assault on a 211 Crew member.

- On several prior occasions, 211 Crew members had complied with defendant's orders to commit assaults, sell drugs, and give money to defendant.
- Defendant was still in charge of the 211 Crew at the time of C.H.'s assault.
- The 211 Crew was a white supremacist gang.
- The 211 Crew prohibited its members from associating with African–Americans, engaging in homosexual activity, or cooperating with authorities.
- 211 Crew members who violated gang rules were subject to disciplinary action, including being assaulted.
- Prior to the assault on C.H., a different 211 Crew member, was stabbed because he was having a homosexual relationship with an African–American inmate.
- C.H. violated 211 Crew rules by socializing and engaging in homosexual activity with an African–American inmate.
- The 211 Crew member who received the letter saying that C.H. needed to be assaulted testified that he routinely asked defendant for his opinion regarding 211 Crew matters.

¶ 20 We conclude that a rational jury, when considering the letter written by defendant with the foregoing evidence, could reasonably find that defendant ordered the assault on C.H.

¶ 21 Since the evidence supports a finding that defendant ordered the assault on C.H., the evidence is sufficient to establish that defendant intentionally persuaded his fellow gang members to assault C.H. Therefore, the evidence was sufficient to support his conviction for solicitation. Because defendant ordered an assault on C.H. and was the leader of the 211 Crew, and his orders had been followed in the past, it was reasonable for the jury to conclude that defendant knew 211 Crew members would assault C.H. Thus, the evidence is sufficient to prove the elements of second degree assault under a theory of complicity: defendant intentionally promoted and encouraged the assault of C.H. with knowledge that such an assault would occur, and

C.H. was the victim of second degree assault. Finally, the evidence was sufficient to support the jury's conclusion that the assault on C.H. was a criminal act undertaken to punish C.H. for his violation of 211 Crew rules. Defendant's role in this plan was to authorize the assault, which he did through his coded letter. Therefore, there was sufficient evidence to prove that defendant conspired with other 211 Crew members to commit second degree assault on C.H.

### B. Solicitation of T.M.

¶ 22 Defendant contends that the evidence was insufficient to support his conviction for soliciting T.M. to commit second degree assault.

¶ 23 As stated above, a person commits the crime of solicitation when he or she intentionally promotes the commission of a felony by attempting to persuade another person to commit the crime, "under circumstances strongly corroborative of that intent." § 18–2–301(1). In reviewing a solicitation conviction, we examine the evidence from the point of view of the solicitor, and the identity or motive of the person being solicited is irrelevant. *See People v. Washington*, 865 P.2d 145, 148 (Colo.1994). Corroborative circumstances of a defendant's intent to promote the commission of a crime may span a long period. *Melina*, 161 P.3d at 640. These circumstances need not occur simultaneously with the act of solicitation, but must permit a finding beyond a reasonable doubt that the defendant intended to promote the commission of the crime solicited. *People v. Aalbu*, 696 P.2d 796, 805 (Colo.1985).

¶ 24 Here, two letters sent from defendant to T.M. were admitted into evidence. In the letters, defendant expressed frustration with T.M. because T.M. was claiming to be a 211 Crew member and had tattooed the numbers 211 across his stomach. The letters told T.M. that he was "in a bad way," and that getting "ink [he] didn't earn ... is *VERY* dangerous." The letter went on to say:

> You have 2 choices right now: (1) I'll have a razor blade sent to you—and you can cut that patch off your body (or you can make

some ink & blacken it in)—And just *Quit Claiming Right Now ... Or* (2) You can go through the process of *Earning* your bones. If you really are down with the sickness—you'll choose # 2 ... But let me tell you Wood. You aren't going to like doing what it takes & I'll be up front with you—you *will* catch a new case. A Class 4 felony-Assault in the 2nd degree. There isn't no 2 ways about it—Because there is shit right here in this unit that needs to be dealt with *Right Now.* . . . It's work that needs handling. But also your clean up job & your bones.

The letter concluded by saying, "Handle shit properly and this all goes away Wood ... So please—Do us all a favor AND TAKE CARE OF BUSINESS!" The letter included a postscript, "If 'yes' we'll tell you what the work is."

¶ 25 A reasonable inference to draw from these letters is that defendant was both threatening T.M. for claiming to be a 211 Crew member and explaining the way T.M. could officially join the gang. From defendant's stating that T.M. had work that needed to be done "right now" and urging T.M. to "take care of business," a rational jury could reasonably infer that defendant was expressing a desire for T.M. to take the steps necessary to join the 211 Crew, namely, commit an assault. The letters also state that 211 Crew members have had to earn their places in the gang, and testimony at trial corroborated these statements. Therefore, the jury could have inferred that defendant intentionally attempted to persuade T.M. to commit a second degree assault. Thus, the evidence was sufficient to support defendant's conviction for the solicitation of T.M.

## C. COCCA

¶ 26 Defendant contends that a criminal act that can no longer form the basis of a criminal count because its statute of limitations has expired cannot be used as evidence to support a COCCA conviction. Based on this contention concerning nine of defendant's charged predicate acts and his contention that there is insufficient evidence to support his convictions for the four predicate acts occurring within the three-year limita-

tions period, defendant argues that there is insufficient evidence to support his COCCA conviction. In the alternative, defendant contends that if there was sufficient evidence to support his other convictions—as we have concluded there was—he was prejudiced by the presentation of evidence of the time-barred criminal acts.

¶ 27 Defendant was convicted of violating section 18–17–104(3), C.R.S.2011, which prohibits a person associated with an enterprise from knowingly conducting or participating in the enterprise through a pattern of racketeering activity. "Enterprise" is defined as "any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any chartered union, association, or group of individuals, associated in fact although not a legal entity." § 18–17–103(2), C.R.S.2011. "Pattern of racketeering activity" is defined as "engaging in at least two acts of racketeering activity which are related to the conduct of the enterprise ... and if the last of such acts occurred within ten years (excluding any period of imprisonment) after a prior act of racketeering activity." § 18–17–103(3), C.R.S.2011. The statute also delineates the various acts that constitute racketeering activity, including second degree assault and offenses related to controlled substances. § 18–17–103(5)(b)(I) & (XIV), C.R.S.2011.

¶ 28 On appeal, defendant does not dispute that the 211 Crew is an enterprise and that the predicate acts offered by the prosecution constitute racketeering activity. Defendant argues, however, that when racketeering activities can no longer provide the basis of substantive criminal charges due to the expiration of their respective statutes of limitations, they also cannot be presented as predicate acts to prove a pattern of racketeering activity.

¶ 29 In 1981, the General Assembly adopted COCCA, patterning the act after the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (2006), commonly referred to as RICO. *People v. Chaussee*, 880 P.2d 749, 753 (Colo. 1994). Since COCCA is modeled after RICO, federal case law construing RICO is instructive. *People v. Hoover*, 165 P.3d 784,

798 (Colo.App.2006). The Colorado General Assembly also required that, "[t]o effectuate the intent and purpose of this article, the provisions of this article shall be liberally construed." § 18–17–108, C.R.S.2011.

¶ 30 Defendant's contention has been rejected by federal courts construing RICO. When considering whether criminal activity that is time-barred can be used as a predicate act for a RICO violation, federal courts have consistently held that "jurisdiction over a single RICO predicate act confers jurisdiction over other predicate acts, including some that could not be prosecuted separately." *United States v. Wong*, 40 F.3d 1347, 1367 (2d Cir.1994). A defendant may be held liable under RICO for predicate acts, the separate prosecution of which would be barred by the applicable statute of limitations, so long as the defendant committed at least one predicate act within the federal five-year limitations period. *Id.; see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir.1987) (to establish a RICO violation, the government must prove at least two predicate acts, at least one of which occurred within the statute of limitations); *United States v. Bethea*, 672 F.2d 407, 419 (5th Cir. 1982) (same); *United States v. McClendon*, 712 F.Supp. 723, 731 (E.D.Ark.1988) (time-barred conduct can be used as a predicate act for RICO purposes, so long as one of the predicate acts occurred within the five-year limitations period); *United States v. Boffa*, 513 F.Supp. 444, 479 (D.Del.1980) (time-barred offenses can still be maintained as predicate acts); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (distinguishing criminal RICO actions when holding that plaintiffs in civil RICO actions cannot recover damages based on time-barred predicate acts). Thus, if one predicate act of racketeering activity is not time-barred, additional predicate acts, regardless of whether they could be brought as substantive claims, "are simply elements of the [RICO] violation." *United States v. Field*, 432 F.Supp. 55, 59 (S.D.N.Y.1977), *aff'd*, 578 F.2d 1371 (2d Cir.1978) (unpublished table decision).

¶ 31 Federal courts have reached this conclusion for two reasons. First, RICO states that a pattern of racketeering activity requires at least two acts of racketeering, "the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (2006). This ten-year provision would be rendered "relatively meaningless" if Congress intended to exclude predicate acts barred by a statute of limitations. *Boffa*, 513 F.Supp. at 480. Second, a purpose of RICO is to prevent the corruption of legitimate industry through a pattern of predicate acts, not to prevent the occurrence of the predicate acts themselves. *Id.; see also United States v. Forsythe*, 560 F.2d 1127, 1135 (3d Cir.1977).

¶ 32 The purposes of COCCA are similar—to prevent the corruption of legitimate business and our democratic processes, the threat to the peace and health of the public, the endangering of domestic security, and the undermining of the general welfare of the state and its citizens. § 18–17–102, C.R.S.2011. Our analysis of COCCA, therefore, leads us to reach a similar conclusion regarding COCCA predicate acts. COCCA was enacted to provide authorities additional tools to offset "defects in the evidence-gathering process of the law which inhibits the development and use of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear on the unlawful activities of those engaged in organized crime." *Id.* COCCA contains a ten-year provision like that found in RICO. § 18–17–103(3). Since a majority of acts that constitute racketeering activity are subject to a three-year statute of limitations, *see* § 16–5–401(1)(a), C.R.S.2011, prohibiting evidence of racketeering activity that occurred more than three years before an indictment would render meaningless the COCCA requirement that all predicate acts occur within ten years of one another. *See Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1174 (Colo.1991) ("[W]e are obliged to construe an entire statutory scheme in a manner that gives consistent, harmonious, and sensible effect to all of its parts.").

¶ 33 Conduct that constitutes racketeering activity can both serve as evidence

supporting a COCCA conviction and give rise to independent charges. *See Hoover,* 165 P.3d at 799. Therefore, the statute of limitations may prevent a defendant from being charged with a crime for the acts that make up the predicate offense, but it cannot prevent the acts from being used as evidence of a defendant's pattern of racketeering activity.

¶ 34 We accordingly conclude that, if one predicate act falls within its respective limitations period, other predicate acts occurring within ten years before the occurrence of the first can be presented as evidence of racketeering activity even if they could not give rise to a separate prosecution. These additional predicate acts are elements of the COCCA violation and can be presented as evidence despite their necessarily prejudicial nature.

¶ 35 Here, the prosecution presented four predicate acts that also gave rise to separate counts, namely, the three acts involving the assault on C.H. and the solicitation of T.M. We conclude that, since there is sufficient evidence to support defendant's convictions for these acts, there is sufficient evidence to support defendant's COCCA conviction.

¶ 36 We also conclude that, since the prosecution was required to prove beyond a reasonable doubt that defendant had committed two acts of racketeering activity, it was permissible and prudent for the prosecution to present evidence of numerous other predicate acts; the prosecution did not know in advance of the verdict which predicate acts the jury would find defendant to have committed. Therefore, because all thirteen predicate acts were committed within ten years of defendant's final charged act of racketeering—the solicitation of T.M.—evidence of the nine predicate acts occurring outside the limitations period established elements of defendant's COCCA violation and was properly admitted.

## III.  Evidentiary Rulings

¶ 37 Defendant contends that the trial court erred by qualifying a police detective as an expert witness, allowing the detective to offer opinions beyond his expertise, and allowing two former 211 Crew members, who were also defendants in the original indictment, to testify that they had pled guilty to COCCA violations. We disagree.

¶ 38 We review a trial court's evidentiary rulings, including rulings on the admissibility of testimony, for an abuse of discretion. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 39 If a defendant fails to make a timely objection to testimony however, we review for plain error. *People v. Montalvo-Lopez,* 215 P.3d 1139, 1145 (Colo.App.2008). Plain error is error that affects a substantial right and is so clear cut and obvious that a competent trial court should be able to avoid it without benefit of objection. *Id.* (citing *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). To require reversal, plain error must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *Id.* (citing *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003)).

¶ 40 Defendant objected to the trial court's qualification of the detective as an expert; therefore, any error is reviewed for harmlessness. Defendant's remaining contentions were not preserved, and we review them for plain error.

### A.  Testimony of the Detective

#### 1.  Qualification as an Expert

¶ 41 Defendant contends that the trial court erred by qualifying a Denver police detective as an expert. We disagree.

¶ 42 Expert testimony admissible under CRE 702 must be both relevant and reliable. *People v. Shreck,* 22 P.3d 68, 77 (Colo.2001). There is no one test for judging the reliability of expert testimony. *Masters v. People,* 58 P.3d 979, 988 (Colo.2002) (citing *Shreck,* 22 P.3d at 77). Instead, the determination whether expert testimony is reasonably reliable falls within the sound discretion of the trial court. *Id.* The trial court's reliability inquiry "should be broad in nature and consider the totality of the circumstances of

each specific case." *Shreck*, 22 P.3d at 77. The trial court must also consider CRE 403 and determine whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at 78.

¶ 43 At trial, the prosecution designated the detective as an expert witness with specialized knowledge of 211 Crew hierarchy, communication methods, and ideology. Defendant challenged his qualifications, questioning whether he possessed the requisite knowledge, experience, or training to have reliable specialized knowledge of the 211 Crew. In a pretrial hearing, the trial court presumptively qualified the detective as an expert on the 211 Crew:

[I]s [the detective's testimony] reliable enough to be helpful. In this particular case, *I can draw on my own in-court experience, specifically with regard to [the detective's] testimony. Having seen it before, having heard it and seen the fruits of it in this case and the other cases that I've handled, I have certainly found it to be enormously helpful to me* to an understanding of exactly the language that was being used by this group, how they were able to communicate with one another, despite the fact that they were separated while incarcerated, all of those sorts of things, how they operated this enterprise on the street.

. . . .

I find that [the detective's] testimony based on his specialized knowledge in this case does qualify him as an expert under *Shreck. I believe it is inherently reliable and helpful to the jury* and therefore I am not going to keep it out on that basis and [the detective] will be allowed to express opinions, *assuming the same foundation is laid in this case as I have seen previously.* I will allow him to state opinions. I will allow contemporaneous objections accepting him as an expert. I will take into consideration any other objections [defense counsel] cares to state in front of the jury to his expertise.

(Emphasis added.)

¶ 44 At trial, the detective testified that his specialized knowledge of the 211 Crew was the result of reading over 1,600 letters to and from 211 Crew members, reviewing over 300 hours of phone calls, and speaking to 70 to 75 people. His expertise was recognized by his peers in making presentations on the 211 Crew, including one to the 500 attendees at the 2005 Colorado State Conference of the Security Threat Intelligence Networking Group. He also had been qualified as an expert on the 211 Crew in two prior cases.

¶ 45 Defendant reiterated his objection to the detective's qualifications when he was tendered as an expert at trial. The trial court accepted the detective as an expert witness and instructed the jurors that they were not required to accept the opinions of the detective, but instead could determine the credibility and the weight his opinions deserved themselves. The trial court reminded the jury of this instruction every day the detective testified.

¶ 46 We conclude that the trial court did not abuse its discretion by qualifying the detective as an expert on the 211 Crew. At the pretrial hearing, the trial court found that the detective possessed specialized knowledge that would be helpful to the jury. The hierarchy of the 211 Crew, the way gang members communicated while incarcerated in different prisons, and the ideology of the gang were all relevant. In attempting to prove that defendant ordered the assault on C.H. while incarcerated in a different state, the prosecution was entitled to offer evidence establishing that defendant had the power to order the assault, the means to communicate his orders, and a motive for ordering the attack.

¶ 47 The detective's testimony at trial also established that his expert opinion regarding the 211 Crew was reliable because it was based on extensive exposure to the gang. While this foundation was not presented at the pretrial hearing, the trial court qualified the detective as an expert on the condition that this foundation would be presented at trial. Thus, when the trial court qualified the detective as an expert, there was sufficient evidence to support the trial court's determination that the detective's testimony

regarding the inner workings of the 211 Crew would be reliable.

¶ 48 To support his contention that the detective should not have been qualified as an expert, defendant cites *United States v. Mejia,* 545 F.3d 179 (2d Cir.2008). The Second Circuit there held that the admission of certain expert testimony by a police officer concerning the activities of a gang he had investigated constituted reversible error. *Id.* at 199, 202.

¶ 49 We are not persuaded that *Mejia,* which does not constitute binding precedent in Colorado, precludes the qualification of the detective as an expert in this case. The court there did not hold that an officer like the detective here could not be qualified as an expert on gangs. To the contrary, that court recognized that an officer with experience comparable to that of the detective in this case could properly testify as an expert concerning gang jargon, messages in code, rules of conduct, membership requirements, operations, and internal structure. *Id.* at 189–90. In fact, the *Mejia* court found no problem with the officer's qualifications— similar to those of the detective in this case— as an expert on the gang at issue. *Id.* at 194.

¶ 50 Therefore, since there was sufficient testimony to support the trial court's decision and *Mejia* does not support defendant's contention, we conclude that the trial court did not abuse its discretion by qualifying the detective as an expert.

### 2. Scope and Nature of the Detective's Testimony

¶ 51 Defendant also alleges that the prosecution inappropriately used the detective to "spoon feed its case to the jury" as did the prosecution in *Mejia.* However, unlike Mr. Mejia, defendant never objected to the detective's testimony on this ground in the trial court. He did not object to the prosecution calling the detective as a witness every day of trial, but affirmatively acquiesced in the practice and chose to reserve his cross-examination of the detective for several days. Defendant did not object to the detective's comments regarding his interpretation of the significance of facts entered into evidence, such as when he stated that defendant's let-ter to T.M. was a request for T.M. to commit an assault.

¶ 52 As the court in *Mejia* stated, "An increasingly thinning line separates the legitimate use of an officer expert to translate esoteric terminology or to explicate an organization's hierarchical structure from the illegitimate and impermissible substitution of expert opinion for factual evidence." *Id.* at 190. We agree that it is difficult to distinguish appropriate expert opinion from the inappropriate use of an expert to summarize factual evidence. After reviewing the detective's testimony, we conclude that, absent an objection from defendant, it would not have been obvious to the trial court that the detective's testimony strayed from allowable expert testimony. After all, this case was tried before *Mejia* was decided, and no reported Colorado state appellate decision has adopted the approach the Second Circuit took in that case. *See People v. Sandoval–Candelaria,* —— P.3d ——, ——, 2011 WL 2186433 (Colo. App.2011) ("If an issue has not yet been decided by a division of this court or the Colorado Supreme Court, then the trial court's error is not obvious, and therefore not plain."). Therefore, we perceive no plain error.

### 3. Testimony Outside of the Detective's Expertise

¶ 53 Defendant also contends that reversal is required because the detective authenticated handwriting, interpreted the meaning of specialized language and coded letters, and offered various legal conclusions. At trial, however, defendant did not object to any of the statements he challenges on appeal. Therefore, we review for plain error. *People v. Watson,* 53 P.3d 707, 712 (Colo. App.2001).

¶ 54 We conclude that no part of the challenged testimony constitutes plain error. The detective's thorough investigation exposed him to the idiosyncrasies of several 211 Crew members and the communication methods and terminology used by the gang. We therefore perceive no error in the detective's interpretation of the esoteric words and phrases used by the 211 Crew.

¶ 55 The detective was also familiar with the handwriting of defendant and other 211 Crew members. Their letters were typically signed and admitted into evidence together with envelopes showing the letters' senders and recipients. A handwriting expert not challenged by defendant verified the identification of defendant's handwriting. Furthermore, defendant does not allege that the detective incorrectly identified the author of any handwritten evidence. Therefore, we conclude that any error regarding the detective's authentication of defendant's handwriting does not undermine our confidence in the verdict.

¶ 56 We also perceive no error in the admission of the detective's testimony regarding the code used in letters written by the 211 Crew for several reasons. First, we have already concluded that the trial court appropriately qualified the detective as an expert on the communication methods used by the 211 Crew. As indicated above, the subject of coded messages is an appropriate area for expert testimony by a police officer who has intensively investigated a gang and its methods of communication. *Mejia*, 545 F.3d at 189. Therefore, any doubts about the accuracy of the detective's interpretation of the code, or his lack of experience cracking coded messages, go to the weight of his testimony, not its admissibility. *See Schultz v. Wells*, 13 P.3d 846, 853 (Colo.App.2000) ("the fact that . . . the witness cannot support his or her opinion with certainty goes only to the weight to be given to the opinion and not to its admissibility"). Second, the trial court instructed the jury that the detective's interpretation of the 211 Crew's code was opinion testimony that it could accept or reject. Third, the jury heard corroborating testimony from a former 211 Crew member that the detective's interpretation of the code was correct. Finally, defendant has not challenged the accuracy of the detective's interpretation of the 211 Crew's code at any time. Therefore, we perceive no error, much less plain error.

¶ 57 Defendant also challenges the detective's statements regarding the legal definitions of deadly weapon, controlled substances, and second degree assault. We perceive no plain error concerning these statements for two reasons. First, the jury received instructions defining these legal terms. We presume that the jury followed the trial court's instructions. *See People v. Ibarra*, 849 P.2d 33, 39 (Colo.1993) (absent a showing of jury bias, it is presumed that the jury understood and followed the trial court's instructions). Second, the detective's statements were not misleading. These statements were consistent with the jury instructions. Therefore, these statements did not constitute plain error.

¶ 58 Finally, defendant challenges the following unobjected to exchange between the prosecution and the detective:

[Prosecutor]: Knowing what you know about the 211 Crew, what is it you think Mr. Davis was asking [T.M.] or what do you think it was presenting as one of the options?

[The detective]: For [T.M.] to commit an assault.

Defendant contends that the detective improperly testified to the significance of the letter defendant sent to T.M. After considering the testimony in context however, we conclude that the detective testified to the various options defendant had laid out for T.M., and the statement challenged was the detective's opinion, based on his knowledge of the 211 Crew's jargon, rules, membership requirements, and structure, that committing an assault was one of the options. The trial court accordingly could have acted within its discretion in overruling an objection to that testimony. Therefore, it did not commit plain error in failing to exclude this statement.

B. Admission of Guilty Pleas

¶ 59 Defendant contends that reversal of his convictions is required because his codefendants' testimony that they had pled guilty to COCCA violations was offered as substantive evidence of his guilt. We disagree.

¶ 60 At trial, J.S. and T.K. both testified, without objection, that they pled guilty to violating COCCA. On both days, the trial court instructed the jury that it could consid-

er the witness's prior felony conviction in determining his credibility.

¶ 61 On cross-examination, defense counsel challenged the credibility of both J.S. and T.K. by highlighting their numerous criminal convictions and the benefits they received from the prosecution in exchange for their guilty pleas and testimony in this case. The prosecution referred to other aspects of J.S.'s and T.K.'s testimony in closing argument, but did not refer to their admissions that they had pled guilty to COCCA violations.

¶ 62 The guilty plea of a codefendant may not be used as substantive evidence of another's guilt. *People v. Brunner,* 797 P.2d 788, 789 (Colo.App.1990). However, evidence of a codefendant's guilty plea may be admissible for other purposes, such as showing acknowledgment of participation by the codefendant or impeaching the credibility of the codefendant. *Id.* It is also appropriate for the prosecution to elicit testimony of a codefendant's guilty plea to blunt an expected attack on his or her credibility. *Id.* (citing *United States v. Davis,* 838 F.2d 909 (7th Cir.1988)); *see also Montalvo–Lopez,* 215 P.3d at 1145.

¶ 63 Here, the prosecution properly anticipated defendant's attack on the credibility of J.S. and T.K. Defendant used both the witnesses' criminal records and their cooperation with the prosecution to question their credibility. Finally, since defendant failed to request or offer a limiting instruction regarding the use of the witnesses' guilty pleas as substantive evidence, the trial court had no duty sua sponte to give an additional limiting instruction. Therefore, we perceive no error, plain or otherwise.

## IV. Habitual Criminal Conviction

¶ 64 The trial court determined that defendant is a habitual offender. Defendant appeals this determination, alleging that (1) the trial court accepted evidence of his prior convictions in the form of "pen packs" in violation of his right to confrontation, and (2) his right to a jury trial was violated because the trial court determined his guilt rather than a jury.

¶ 65 Defendant did not object to either the admission of the pen packs or the lack of a jury trial. Therefore, we review for plain error. *See People v. Moore,* — P.3d —, —, 2010 WL 5013681 (Colo.App.2010) (*cert. granted on other grounds* 2011 WL 4448964 (Sept. 26, 2011); *People v. Banark,* 155 P.3d 609, 611 (Colo.App.2007)).

¶ 66 Defendant's contentions have been rejected in previous reported decisions, both with regard to confrontation, *see Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 2539–40, 174 L.Ed.2d 314 (2009) (business and public records are generally admissible absent confrontation, not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial); *Moore,* — P.3d at —; *People v. Shreck,* 107 P.3d 1048, 1060–61 (Colo.App. 2004), and right to jury trial, *see Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increased the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. . . ."); *People v. Huber,* 139 P.3d 628, 631 (Colo.2006); *Lopez v. People,* 113 P.3d 713, 723 (Colo.2005); *People v. Moore,* 226 P.3d 1076, 1089 (Colo.App.2009); *People v. Nunn,* 148 P.3d 222, 225 (Colo.App. 2006); *People v. Benzor,* 100 P.3d 542, 545 (Colo.App.2004); *People v. Gilmore,* 97 P.3d 123, 134 (Colo.App.2003); *People v. Carrasco,* 85 P.3d 580, 582 (Colo.App.2003).

¶ 67 Therefore, we perceive no error.

## V. Sentencing

¶ 68 Defendant contends, and the People agree, that the trial court erred by concluding that it was required by law to order that defendant's COCCA sentence be served consecutively to the sentences he was already serving. We agree.

¶ 69 We review sentencing decisions for abuse of discretion. *People v. Linares–Guzman,* 195 P.3d 1130, 1137 (Colo. App.2008). When a trial court "misapprehends the scope of its discretion in imposing

sentence, a remand is necessary for reconsideration of the sentence within the appropriate sentencing range." *Id.* (citing *People v. Willcoxon,* 80 P.3d 817, 822 (Colo.App.2002)).

¶ 70 Here, the trial court stated that the sentence for defendant's COCCA conviction was required by law to run consecutively to the sentences for the three crimes to which he pled guilty in 1995. The People concede, and we agree, that there is no requirement for consecutive sentencing under these circumstances.

¶ 71 Therefore, we vacate defendant's COCCA sentence and remand the case to the trial court to determine, in its discretion, whether that sentence should run consecutively to or concurrently with the sentences for the prior crimes.

¶ 72 The judgment is affirmed, the sentence is vacated to the extent the COCCA sentence is to be served consecutively, the sentence is otherwise affirmed, and the case is remanded for resentencing as directed above.

Judge ROMÁN and Judge RICHMAN concur.