22CA1631 Peo v Woods 11-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1631
Jefferson County District Court No. 22CR215
Honorable Russell Klein, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Paul A. Woods,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

Philip J. Weiser, Attorney General, Gina M. Nykerk, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Casey Mark Klekas, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Paul A. Woods, appeals his convictions for second degree assault-strangulation and knowing or reckless child abuse. We affirm the judgment, but we remand for correction of the mittimus to reflect that the child abuse conviction did not involve genital mutilation.

## I.    Background

¶ 2    On the evening of January 14, 2022, Woods and his mother argued about a telephone battery. At the time, Woods and his juvenile daughter, N.W., were living with his mother in her home. Around 7:00 p.m., Woods's mother spoke with Woods's brother on the phone. During the call, Woods attacked and strangled his mother, causing the call to disconnect. Woods's brother called 911 after he had called her back and received no response.

¶ 3    Having heard the commotion, N.W. went into Woods's mother's bedroom and found Woods strangling her. N.W. pleaded with her father to stop. N.W. attempted to pull her father off of his mother. Woods then turned his attention to N.W. and began to strangle her. He ultimately pushed her outside to the upstairs balcony and suspended her over the balcony. After Woods let N.W. return inside, N.W. called 911 and then told Woods the police were

coming. Woods fled the scene and was later apprehended by the police at a friend's house.

¶ 4 Woods's mother and N.W. were taken to the hospital for evaluation and treatment of their injuries. The State charged Woods with one count of second degree-assault–strangulation, and one count of misdemeanor child abuse and a jury convicted him as charged.

¶ 5 On appeal, Woods contends the court reversibly erred by (1) denying his motion for new trial and allowing a late-endorsed prosecution expert to testify; and (2) cumulatively allowing the erroneous admission of evidence, exhibits, and testimony. He also contends that the mittimus contains an error requiring correction. We reject his first two contentions, but we agree that the mittimus needs to be corrected.

## II.  Motion for a New Trial

¶ 6 Woods contends that the trial court abused its discretion by allowing a late-endorsed expert witness to testify during trial and denying his motion for a new trial after the verdicts. We discern no error.

2

## A.    Additional Facts

¶ 7    Woods and his counsel first became aware of forensic nurse examiner Trisha Park in January 2022 when the prosecution endorsed her as a lay witness.  Park worked at the hospital where Woods's mother and daughter were treated for their injuries. Thirteen days after the expert witness disclosure window under Crim. P. 16(I)(b)(3) closed and twenty two days before trial, the prosecution endorsed Park as an expert.  Woods moved to strike this endorsement as untimely and noncompliant with the discovery rules for expert witnesses.  The trial court held a hearing on the motion.

¶ 8    At the hearing, the prosecution confessed its violation of Crim. P. 16(I)(b)(3), attributing it to an oversight.  After hearing from both parties, the trial court found that the late disclosure was neither intentional nor part of a pattern of neglect by the prosecution.  It directed the prosecution to remedy the oversight by facilitating an interview between Park and Woods's defense team.  After several failed attempts to schedule an interview, Woods renewed his request to strike two days before the trial began.

¶ 9 After a second hearing, the trial court found that the oversight could still be remedied and that Woods and his counsel's inability to connect with Park was not the prosecution's fault. The prosecutor suggested that the trial court grant a continuance, but defense counsel said the defense was not requesting one.

¶ 10 The trial court ordered the prosecution to make Park available to be interviewed by the defense on the first day of trial. Defense counsel interviewed Park at the end of the first day of trial and Park testified as an expert witness the following day over defense counsel's renewed objection. After the verdicts, Woods filed a motion for new trial, arguing that the court's remedy — allowing only a midtrial interview — precluded him from adequately investigating or cross-examining Park.

### B. Standard of Review and Applicable Law

¶ 11 We review a court's resolution of discovery issues for an abuse of discretion. *People v. Acosta*, 2014 COA 82, ¶ 10. A court abuses its discretion when its discovery order is manifestly arbitrary, unreasonable, or unfair. *People v. Tippet*, 2023 CO 61, ¶ 35.

¶ 12 Crim. P. 16 and other discovery rules protect criminal defendants' Fifth and Fourteenth Amendment due process rights.

*See* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25; and Crim. P. 16(I). Under Crim. P. 16(1)(a)(1)(III), prosecution expert reports and statements must be disclosed to the defense. The prosecution should perform disclosures "as soon as practicable but not later than 35 days before trial." Crim. P. 16(1)(b)(3). Missed deadlines may undermine a defendant's ability to effectively cross-examine a witness — a fundamental constitutional right. *Pointer v. Texas*, 380 U.S. 400, 405 (1965).

¶ 13     For an error to require reversal, a defendant must establish prejudice by showing that the late endorsement was a surprise, that it provided an inadequate opportunity for him to interview the witness before trial, and that the court denied a timely request for a continuance. *People v. Bailey*, 552 P.2d 1014, 1017 (Colo. 1976); *see also People v. Cevallos-Acosta*, 140 P.3d 116, 125 (Colo. App. 2005) ("In fashioning a remedy, the court must weigh 'the reasons for the [People's] delay in affording the required discovery, the extent of prejudice, if any, that the defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance . . . .'" (quoting *People v. Dist. Court*, 793 P.2d 163, 168 (Colo. 1990))).

¶ 14     When a discovery violation occurs, the trial court has broad

discretion in fashioning an appropriate remedy. *Cevallos-Acosta*,

140 P.3d at 125. However, the court should impose the least severe

sanction that will ensure full compliance with its orders. *People v.*

*Dist. Court*, 664 P.2d 247, 253 (Colo. 1983).

## C. Analysis

¶ 15     Woods contends that the late expert endorsement surprised

him and prejudiced his ability to adequately prepare for trial. We

are not convinced and discern no abuse of discretion in the court's

remedy for the Rule 16 violation, for three reasons.

¶ 16     First, the record shows that the prosecution endorsed Park as

a witness on January 19, 2022, almost six months before the trial.

The prosecution also provided the defense with Park's reports at

that time, and Park produced no additional reports before testifying.

Thus, we conclude the defense was aware of Park, and the

substance of her testimony, well before trial. The formality of

changing her endorsement twenty-two days before the trial did not

prejudice Woods. *See People v. Loscutoff*, 661 P.2d 274, 278 (Colo.

1983) (finding no prejudice from late endorsement when witness

was known to the defense).

6

¶ 17    Second, the record shows that Woods had numerous opportunities to interview Park before trial and it was defense counsel's own scheduling difficulties and miscommunications that prevented it.  Acknowledging these difficulties, the trial court ordered the prosecution to make Park available on the first day of trial.  While this arrangement might not have been ideal for the defense, the record shows that the interview occurred and that defense counsel was able to effectively cross-examined Park.  Moreover, the trial court limited Park's testimony to information originally disclosed.  And, critically, Woods has not identified any additional information he would have presented, or any prejudice suffered, as a result of the late endorsement.  Under these circumstances, we discern no prejudice resulting from the court's remedy for the late disclosure.

¶ 18    Third, the defense had the opportunity to seek a continuance, but it declined to do so.  *See People v. Greer*, 262 P.3d 920, 931 (Colo. App. 2011) (noting that the defendant's failure to move for a continuance "discredited" his claim of prejudice); *People v. Castango*, 674 P.2d 978, 980 (Colo. App. 1983) (considering

defendant's failure to request a continuance in response to late endorsement of lay witnesses as evidence of lack of prejudice).

¶ 19　Accordingly, we discern no abuse of discretion in the trial court's remedy for the discovery violation.

## III.　Cumulative Error

¶ 20　Woods contends that the cumulative effect of six errors requires reversal. These alleged errors include (1) the admission of a 911 call; (2) the admission of strangulation diagrams; (3) a challenge to Park's expert qualification; (4) a CRE 404(b) violation; (5) a police officer's testimony concerning probable cause to arrest; and (6) the prosecutor's misstatement of the law in closing argument. We disagree.

## A.　911 Call

¶ 21　Woods first contends that the trial court erroneously admitted the 911 call made by Woods's brother under the excited utterance exception when his brother had not observed the events first-hand. During trial, the prosecution sought admission of the call into evidence, over defense counsel's objections. Woods's brother told the 911 operator:

> I was talking to my mom and I'm pretty sure my brother is hitting her. Please send someone there now . . . it's an emergency . . . it sounded like he was choking her, ma'am. I was on the phone with her and then she just started screaming and stuff and I heard someone in the background saying, "leave her alone." Please, please, it's an emergency. Please. . . . I heard him yelling, he's all drunk or something, they were yelling about something stupid and then all of the sudden I heard him come in and he said "you!" and then I heard my mom, it sounded like she was struggling, I hope she's not choking. I need someone there now. . . . His name is Paul Woods. Paul Anthony Woods.

¶ 22 The call lasted approximately one minute and twenty-nine seconds. Woods contends that the call was inadmissible under CRE 602 and CRE 403 and that the call should have been considered hearsay.

¶ 23 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Davis*, 2012 COA 56, ¶ 38. A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.* CRE 602 provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that [he] has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness [himself].

9

¶ 24    We reject Woods's argument regarding lack of personal knowledge because the record shows that his brother was on the phone with their mother and heard both Woods and the sounds of his mother being attacked. Thus, although not physically present, the brother was a percipient witness and did not lack personal knowledge. The "threshold for satisfying the personal-knowledge requirement is not very high and may be inferable" from the "total circumstances surrounding the matter." *Curry v. Brewer*, 2025 COA 28, ¶ 20 (citing *Murray v. Just In Case Bus. Lighthouse, LLC*, 2016 CO 47M, ¶ 33 (internal citation omitted)).

¶ 25    Woods also asserts that CRE 403 precludes the admission of the 911 recording because the danger of unfair prejudice substantially outweighed its probative value. "All relevant evidence is admissible," CRE 402, but it may be excluded under CRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." Unfair prejudice refers only to evidence that tends to cause a decision to be made on an improper basis. *People v. Banks*, 983 P.2d 102, 105 (Colo. App. 1999), *aff'd on other grounds*, 9 P.3d 1125 (Colo. 2000). In reviewing whether such evidence should have been excluded, we "must afford the evidence

the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995).

¶ 26    Here, the 911 recording was admitted with testimony from Woods's mother and N.W. "Rule 403's 'probative value' is not considered in isolation but signifies the 'marginal' or 'incremental' probative value of evidence relative to the probative force of other evidence available in the case." *People v. Williams*, 2020 CO 78, ¶ 14 (citations omitted). We conclude the 911 call was highly relevant, and that its probative value exceeded any unfair prejudice.

¶ 27    Woods last argues that the language "I heard someone in the background saying, 'leave her alone,'" constitutes hearsay within hearsay, to which no exceptions apply. We are not persuaded. Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. CRE 801(c). Unless an exception applies, hearsay statements are generally inadmissible because they are presumptively untrustworthy. *People v. Vanderpauye*, 2023 CO 42, ¶ 26.

¶ 28    As relevant here, an excited utterance is a "statement relating to a startling event or condition made while the declarant was

11

under the stress of excitement caused by the event or condition."

CRE 803(2). A statement may qualify as an excited utterance if

> (1) the occurrence or event was sufficiently startling to render inoperative the normal reflective thought processes of an observer; (2) the declarant's statement was a spontaneous reaction to the event; and (3) direct or circumstantial evidence supports an inference that the declarant had the opportunity to observe the startling event.

*People v. King,* 121 P.3d 234, 237-38 (Colo. App. 2005).

¶ 29    Woods's brother called 911 immediately after his mother's call disconnected and he could not reach her. We therefore conclude that that the statements in the 911 call were made in response to a startling event, constituted a spontaneous reaction to that event, and satisfied the requirements of an excited utterance. *See* CRE 803(2) (an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"); *see, e.g., People v. Martinez,* 18 P.3d 831, 835 (Colo. App. 2000). Thus, we discern no error in the admission of the 911 call.

## B.    Strangulation Diagrams

¶ 30    Woods next contends that the trial court erroneously admitted Park's strangulation diagrams under CRE 803(4) and argues that Park acted as an extension of the police and prosecutor's office rather than as a neutral medical provider.  We are not persuaded.

¶ 31    During trial, Park testified to her experience as a forensic nurse examiner who examined Woods's mother.  Park conducted a full body examination and noted her observations of strangulation in a diagram.  During cross examination, the following colloquy occurred:

> [Defense Counsel]: So your role as a forensic nurse examiner is to conduct an assessment.
>
> [Park]: Correct.
>
> [Defense Counsel]: And collect evidence.
>
> [Park]: Correct.
>
> [Defense Counsel]: Part of your training is in evidence collection?
>
> [Park]: Correct.
>
> [Defense Counsel]: Such as chain of custody?
>
> [Park]: Correct.
>
> [....]

13

[Defense Counsel]: This collection of evidence is for law enforcement?

[Park]: Yes.

[Defense Counsel]: Okay. Law enforcement will pick up any, let's say, DNA swabs you do?

[Park]: Correct.

[Defense Counsel]: Law enforcement will pick up the forms that you complete?

[Park]: Correct.

[Defense Counsel]: And the use of that evidence you collect can be used for the prosecution of a crime, correct?

[Park]: That would be outside my area of expertise.

[Defense Counsel]: Do you agree that law enforcement collects evidence for alleged crimes?

[Park]: I will hope they -- yes.

[Defense Counsel]: Okay. You testified that you're a member of The International Association of Forensic Nursing, correct?

[Park]: That is correct.

[....]

[Defense Counsel]: Okay. And . . . forensic nurse examiners collect evidence and give testimony that can be used in a court of law to apprehend or prosecute perpetrators who commit violent and abusive acts.

14

[Park]: Say that again.

[Defense Counsel]: Do you agree that forensic nurse examiners collect evidence?

[Park]: Yes.

[Defense Counsel]: And give testimony that can be used in the court of law to apprehend or prosecute perpetrators of crimes?

[Park]: Yes.

[Defense Counsel]: In your role as a forensic nurse examiner, police will refer an alleged victim to you.

[Park]: Or suspect.

[Defense Counsel]: It's never your role to investigate, correct?

[Park]: Correct.

¶ 32 Based on Park's answers, Woods argues that the diagrams constitute hearsay because they were made for law enforcement in anticipation of litigation.

¶ 33 The prosecution argued that the diagrams were related to Park's treatment of Woods's mother and disagreed with defense counsel that Park was just an "evidence collector." The court agreed with the prosecution and reasoned that Park had sufficiently

15

testified that she had created the diagrams for the purpose of medical care rather than evidence gathering.

¶ 34     We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In Interest of L.B.*, 2017 COA 5, ¶ 58. As discussed above, hearsay statements "are out-of-court declarations offered into evidence for the truth of the matter asserted." *Blecha v. People*, 962 P.2d 931, 937 (Colo. 1998) (citing CRE 801(c)). A hearsay statement is not admissible unless it falls within an exception to the hearsay rule. CRE 802; *People v. Welsh*, 176 P.3d 781, 790 (Colo. App. 2007). As relevant here, statements "(1) made for purposes of medical diagnosis or treatment; (2) that describe medical history, symptoms, or the inception or cause of symptoms; (3) insofar as they are reasonably pertinent to diagnosis or treatment" are admissible under the medical diagnosis exception. *Kelly v. Haralampopoulos*, 2014 CO 46, ¶ 20; *see also* CRE 803(4). Because a declarant obtaining medical services "knows that a false statement may cause misdiagnosis or mistreatment, [the statement] carries special guarantees of credibility." *Kelly*, ¶ 20 (quoting *White v. Illinois*, 502 U.S. 346, 356 (1992)). The test for admissibility is modified, however, when a declarant makes a statement to a

healthcare professional in preparation for litigation. *See People v. Tyme*, 2013 COA 59, ¶ 20.

¶ 35    In *King v. People*, 785 P.2d 596, 599 n.3 (Colo. 1990), the Colorado Supreme Court held that the medical diagnosis or treatment exception does not require an independent showing of the declarant's trustworthiness, but instead, can be established by a showing that it was reasonably pertinent to diagnosis and was relied upon by the healthcare professional to arrive at a diagnosis. *Id.* at 602; *see also Kelly*, ¶ 24 ("[I]f a statement is offered for the purpose of determining the nature, source, or cause of a patient's medical condition, it falls within the language of Rule 803(4) . . . .").

¶ 36    Here, Park examined Woods's mother, who reported that she had been strangled. As a professional nurse, Park testified that her role was to assess injuries, provide treatment to patients, and triage resources for the patient's care. In carrying out these duties, she conducted a head-to-toe medical examination and documented her observations in a diagram, consistent with established protocol for a forensic examination. Park further testified that she relied on her specialized training in diagnosing and treating strangulation injuries to diagnose the mother's strangulation injuries.

Accordingly, we conclude that the strangulation diagram satisfies the medical diagnosis exception to the rule against hearsay and discern no error in its admission.

## C. Expert Qualifications

¶ 37    Woods next contends that Park lacked the necessary qualifications to be accepted as an expert witness. We disagree.

¶ 38    We review the admission of expert testimony for an abuse of discretion. *Kutzly v. People*, 2019 CO 55, ¶ 8. "[T]he standard of review pertaining to the admissibility of expert testimony is highly deferential." *People v. Jimenez*, 217 P.3d 841, 866 (Colo. App. 2008) (alteration in original) (quoting *People v. Ramirez*, 155 P.3d 371, 380 (Colo. 2007)). "Trial courts are vested with broad discretion to determine the admissibility of expert testimony, and the exercise of that discretion will not be overturned unless manifestly erroneous." *Ramirez*, 155 P.3d at 380.

¶ 39    Under CRE 701, lay opinion testimony is testimony that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

¶ 40    In contrast, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  CRE 702.  Expert testimony "is that which goes beyond the realm of common experience and requires experience, skills, or knowledge that the ordinary person would not have."  *Venalonzo v. People*, 2017 CO 9, ¶ 22.  "[T]he critical factor in distinguishing between lay and expert testimony is the basis for the witness's opinion."  *Id.*

> If the witness provides testimony that could be expected to be based on an ordinary person's experiences or knowledge, then the witness is offering lay testimony.  If, on the other hand, the witness provides testimony that could not be offered without specialized experiences, knowledge, or training, then the witness is offering expert testimony.

*Id.* at ¶ 23.  "[T]estimony is not automatically considered expert opinion testimony simply because the witness has extensive training and experience — it is the basis of the witness's opinion that is determinative."  *People v. Murphy*, 2021 CO 22, ¶ 32.

¶ 41  Woods argues, without specific supporting authority, that Park's failure to become a certified nurse examiner, her lack of experience testifying as an expert, and her return to work less than a year earlier precluded her expert qualification. However, every expert must be qualified for a first time, and beyond these assertions, Woods provides no argument for why they should constitute an abuse of discretion. Because we do not address undeveloped and conclusory arguments, we do not further consider this issue. *See People v. Duran*, 2025 COA 34, ¶ 14 n.3 (explaining that appellate courts don't address undeveloped arguments); *see also People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007) (declining to address arguments presented in a perfunctory or conclusory manner).

### D.  CRE 404(b)

¶ 42  During her direct examination, N.W. described how Woods strangled her for "fifteen to [twenty] seconds." Woods contends that because the prosecution did not charge him for this alleged conduct, the trial court erred in admitting it without conducting a CRE 404(b) analysis. We disagree.

20

¶ 43     We review the trial court's evidentiary rulings for an abuse of discretion under the standards set forth previously. *See People v. Gonzales-Quevedo*, 203 P.3d 609, 612 (Colo. App. 2008). Only relevant evidence is admissible. CRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Evidence is probative if it has "a tendency to prove the proposition for which it is offered." *Fletcher v. People*, 179 P.3d 969, 974 (Colo. 2007).

¶ 44     In determining whether other acts evidence is admissible, our supreme court has recognized a distinction between intrinsic acts, which require only a relevance analysis, and extrinsic acts, which require a CRE 404(b) analysis. *Rojas v. People*, 2022 CO 8, ¶ 44. Intrinsic acts are those that (1) directly prove the offense charged, and (2) occur contemporaneously with the charged offense and facilitate the commission of it. *Id.*

¶ 45     Recall, the prosecution charged Woods with child abuse — causing an injury to N.W.'s life of health or permitting N.W. to be unreasonably placed in a situation that poses a threat of injury to

her life or health. N.W. testified that Woods briefly choked her immediately before suspending her over the balcony. Thus, we conclude that the act of choking occurred contemporaneously with the charged act, facilitated the commission of that act, and was properly admitted as intrinsic evidence.

### E. Probable Cause to Arrest Testimony

¶ 46 Woods next contends the trial court erroneously admitted testimony that officers had probable cause to arrest Woods. While we agree that an error occurred, we conclude it was harmless. *Medina v. People*, 114 P.3d 845, 857 (Colo. 2005) (an error is deemed harmless where "viewing the evidence as a whole, the error did not substantially influence the verdict or impair the fairness of the trial").

¶ 47 During trial, a police officer testified to the following:

> [Officer]: When I arrived there I had information from other officers over the radio that the suspect was wearing all black, he had left on a bicycle. And they established probable cause—
>
> [Defense counsel]: Objection, relevance.
>
> [Court]: Overruled.
>
> [Defense counsel]: Hearsay.

22

[Court]: Overruled.

[Prosecutor]: You can finish your statement.

[Officer]: So they had established probable cause to arrest the suspect for second degree assault, and he was located. So I responded to that address.

¶ 48   "Generally, when probable cause to arrest the defendant is not at issue, it is improper to present evidence about obtaining an arrest warrant or possessing probable cause." *People v. Salazar*, 2023 COA 102, ¶ 39 (citing *People v. Mullins*, 104 P.3d 299, 301 (Colo. App. 2004)). But the rule is tempered by a number of factors, including the length and detail of the testimony, whether the testimony described how officers obtained probable cause, what probable cause means, whether probable cause was argued in closing, and whether the court provided a limiting instruction to the jury concerning the use of the testimony. *Salazar*, ¶¶ 40-43.

¶ 49   Because the existence of probable cause was not at issue, we conclude that the testimony was admitted in error. Nevertheless, reversal is not required because the officer's testimony was brief, it did not describe how the officers determined probable cause, it did not define probable cause, the prosecutor did not argue the

23

testimony in closing argument, and the court did not provide the jury with a limiting instruction concerning its use. *Id.*

### F.    Closing Argument

¶ 50    Woods last contends that the prosecutor misstated the law during closing arguments. We disagree.

¶ 51    During closing arguments, the prosecutor stated the following:

> [Prosecutor]: That if you think that his intent, in particular with the intent, that's an element of second-degree assault, wasn't formed because he was intoxicated by Fentanyl and alcohol, that you should find him not guilty. And you should.  You all during voir dire talked to me about this concept.  We talked about how you would follow the law.  I'm asking you to follow the law.  But following this law does not mean finding him not guilty. Let's talk about why.
>
> [Defense counsel]: Objection, misstates the laws and instructions.
>
> [Court]: Overruled.  But the jury will receive the instructions, they will follow the rules that are provided by the Court.
>
> [Prosecutor]: Thank you, Judge.  There are tremendous, tremendous instances of him exhibiting intent.  Let's start off with how this started.  As an argument.  He didn't run into a room out of the blue.  They'd been talking about something . . . .

¶ 52     When reviewing a claim of prosecutorial misconduct, "we consider whether the prosecutor's conduct was improper and whether any impropriety requires reversal." *People v. Walker*, 2022 COA 15, ¶ 27.  "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). Claims of improper argument are evaluated "in the context of the argument as a whole and in light of the evidence before the jury." *People v. McMinn*, 2013 COA 94, ¶ 60 (citation omitted).  Because arguments delivered in the heat of trial are not perfectly scripted, courts afford prosecutors the benefit of the doubt when their remarks are ambiguous or inartful.  *Id.* at ¶ 61.  We will not disturb the trial court's rulings on alleged misconduct absent a showing of an abuse of discretion.  *Walker*, ¶ 27.

¶ 53     To be sure, the prosecutor's remark, when considered in isolation, appears to be incorrect.  However, when viewed in the context of the entire argument, we conclude that no misconduct occurred and that the remark was simply inartful.  Accordingly, we discern no basis for reversal.

¶ 54    The cumulative error doctrine applies when "the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process." *Howard-Walker v. People*, 2019 CO 69, ¶ 24 (quoting *People v. Lucero*, 615 P.2d 660, 666 (Colo. 1980)).  "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not." *Howard-Walker*, ¶ 25 (citation omitted).  However, we have only identified one error, the erroneously admitted testimony that officers had probable cause to arrest Woods.  Because we conclude that this error was harmless, we also conclude there was no cumulative error.  *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009) (cumulative error analysis is required only when multiple errors have been identified).

## IV.    Mittimus

¶ 55    Finally, Woods contends, and the People agree, that the mittimus must be corrected to reflect that his child abuse conviction did not include genital mutilation.  Accordingly, we remand the case for correction of the mittimus.  *See* Crim. P. 36

26

("Clerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.").

## V. Disposition

¶ 56 The judgment is affirmed, and the case is remanded for correction of the mittimus.

JUDGE PAWAR and JUDGE YUN concur.